

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00214-CR

---

REGINALD J. QUALLS                                          APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1403427D

----------

## OPINION

----------

A jury convicted Appellant Reginald J. Qualls of forgery by possession with intent to pass a forged writing, a third-degree felony, Tex. Penal Code Ann. § 32.21(a), (b), (e)(1) (West Supp. 2017),[1] and upon accepting Appellant's plea

---

[1]Subsection (e-1), which, upon proof during trial that the actor committed forgery to obtain or attempt to obtain a property or service, classifies the offense level according to the value of that property or service, Tex. Penal Code Ann. § 32.21(e-1) (West Supp. 2017), applies only to offenses committed on or after

of true to the habitual offender allegation, the visiting judge assigned to sit for the elected judge (the trial court) sentenced him to thirty-three years' confinement. *See id.* § 12.42(d) (West Supp. 2017). In eight issues, Appellant contends that the accomplices' testimony was not sufficiently corroborated, the evidence was insufficient to support his conviction, and the trial court abused its discretion by admitting or refusing to strike certain pieces of evidence. Because we hold that the accomplices' testimony was sufficiently corroborated, the evidence was sufficient to support Appellant's conviction, and the trial court did not reversibly err by making any of the challenged evidentiary rulings, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Deitra Coleman, Appellant's Wife, Tried to Buy Two Xboxes at GameStop with Fifteen $50 Bills and Some Small Change.

On December 27, 2014, a black man and woman, identified at trial as Appellant and his wife, Deitra Coleman, walked into GameStop on South Hulen Street in Fort Worth. Coleman asked for two Xbox consoles. Appellant left the store, came back, and left again while Coleman remained in the store. Coleman gave the cashier, Derek Cook, fifteen $50 bills as payment for the Xboxes. After Cook counted the money, he asked for more because the total due was around

---

its effective date, September 1, 2017. *Id.* historical and statutory note [Act of May 24, 2017, 85th Leg., R.S., ch. 977, §§ 37, 38, 2017 Tex. Sess. Law Serv. 3973, 3988 (West)].

2

$757 and change. Coleman placed seven dollars and some coins on the counter.

**B. Coleman Abandoned the Fifteen $50 Bills but Retrieved the Seven Dollars and Coins Before Leaving GameStop.**

Cook held one of the $50 bills up to the light to look for its security strip and watermark, neither of which he saw. Before Cook could tell Coleman that he required another form of payment, she left, abandoning the fifteen $50 bills but taking the seven dollars and coins from the counter.

**C. Evidence at Trial Showed That Appellant Participated in the Transaction and That He Gave Coleman the Bills Before the Transaction.**

At trial, cashier Cook, who no longer worked at GameStop, identified Appellant as the man who was in GameStop with Coleman on December 27, 2014, but on cross-examination, Cook stated that he was "[n]ot one hundred percent" certain that the man in a still photograph taken from the store's surveillance video that day was Appellant. Similarly, Cook had picked Appellant's picture out in a pretrial, out-of-court lineup, but with only a "70 to 80 percent" or "75 to 80 percent" certainty.

Cook testified that he did not recall seeing Appellant give Coleman any money at the time of the incident, but when reviewing the store's surveillance video later, "[i]t looked [to him] as if the male handed the female a small fold of cash" before the transaction.

3

At trial, Coleman admitted that Appellant gave her something at GameStop but stated that it was not money, and she did not know or remember what it was. During the investigation, however, Coleman told Fort Worth Police Department (FWPD) Detective Ron Turner, who had been promoted to Sergeant by trial, that Appellant handed her the money to buy the Xboxes at GameStop.

Similarly, Investigator Michael Weber of the Tarrant County District Attorney's Office (TCDA) testified that Coleman told him that Appellant gave her $600. Further, accomplice witness Edward Nunley testified that Appellant told him that his purchases with the counterfeit money he bought from Nunley included games from GameStop. Finally, the jury saw the GameStop surveillance video.

**D.    The Bills Collected by the FWPD at GameStop Were Counterfeit, and Evidence at Trial Shows That Appellant Knew It.**

**1.    GameStop Cashier Derek Cook Distinguished the $50 Bills from Genuine Currency.**

Cook testified:

- He examined the top $50 bill of the stack he received from Coleman for "maybe five to ten seconds" and determined that it had neither a security strip nor a watermark and that it "didn't feel normal" and "felt different" than money;

- He checked some of the other bills with the light;

- Two separate serial numbers were used: ten bills had one serial number, and the remaining five bills had the other serial number;

- Many of the bills had the same stamp on the back;

- The bills looked faded, "as the ink [wa]s kind of washed away";

4

- His manager double-checked the bills and agreed that they were not real; and

- Neither customer returned for the $50 bills or asked Cook questions about why the transaction was not completed.

**2.    Shaun Baughman, Walmart Asset Protection Manager, Testified Counterfeit Money Was Received the Same Day at a Walmart Store in Fort Worth.**

Shaun Baughman, Asset Protection Manager for Walmart, testified about a similar offense that occurred earlier on the same day at a Fort Worth Walmart:

- On December 28, 2014, the store's cash office notified him that on the previous afternoon, approximately $480 in counterfeit $50 and $10 bills had been received in the electronics department at Register 67;

- Cash office personnel researched until "[t]hey actually found the transaction for that exact denomination";

- He tracked the transaction on the store's surveillance video;

- On the video, Baughman saw a black male enter the store with a black female, give her money, stand at the register with her, and leave the store with her, carrying the Xbox she had purchased;

- If the serial numbers on the counterfeit money at Walmart matched the serial numbers on the counterfeit money collected at GameStop, he would think the counterfeit money possibly came from the same people;

- The bills "shouldn't have the same serial number";

- Baughman was not an expert at recognizing counterfeit money, but he was "pretty good"; and

- He recognized the money to be counterfeit from the feel of the paper, the look of the ink, the absence of a security strip, and the fact that the lines were not straight on the paper.

Baughman also testified that photocopies of the $50 bills used at GameStop were "picture[s] of counterfeit money. Or it's fifty dollar bills." Over objection, he testified that he could "tell by [the] way the paper [was] crumbling, it[ was] not the actual paper. The ink appear[ed] to be off."

> **3. Accomplice Deitra Coleman Admitted That Appellant Gave Her the Money She Spent at Walmart, and the Walmart Surveillance Video Showed a Couple Dressed Exactly Like the Couple in the GameStop Video Running to Their Car After Leaving the Store.**

Even though TCDA Investigator Weber testified that Coleman told him that neither she nor Appellant knew the GameStop money was counterfeit, she admitted at trial that on December 27, 2014, she and Appellant had gone to Walmart before they went to GameStop and that he had given her money at some point before they reached Walmart that she used there to purchase something, but she could not remember what. The State played for the jury those portions of the Walmart surveillance video showing a black man and woman dressed exactly like the couple in the GameStop surveillance video arriving in the Walmart parking lot, entering the store, completing the transaction, exiting the store, running to their car in the parking lot, and driving away.

> **4. Special Agent Jason Boswell Testified That the GameStop Bills and Walmart Bills Were Counterfeit.**

United States Secret Service Special Agent Jason Boswell testified:

- He had examined the bills from the GameStop and Walmart transactions at the FWPD's request;

- The bills were all counterfeit;

- JK16440416A, the serial number on the $50 bill he held at trial, taken from State's Exhibit 20 containing the Walmart bills, matched the serial number on the GameStop bills in State's Exhibit 18;[2]

- Henry Paulson was the Secretary of the Treasury when one of the counterfeit $50 bills collected from GameStop purported to be issued;

- Timothy Geithner was the acting Secretary of the Treasury when another of the GameStop counterfeit $50 bills purported to be issued;

- The Department of the Treasury authorizes the making of United States currency;

- The counterfeit money was not authorized to be printed;

- The counterfeit money purported to be genuine currency; and

- The Department of the Treasury did not authorize the counterfeit money to purport to be United States currency.

### 5. FWPD Sergeant Ron Turner Testified That the Bills Were Counterfeit.

Sergeant Turner testified that Coleman told him that the money Appellant gave her to spend at GameStop and Walmart came from accomplice Nunley. Sergeant Turner further testified that the bills were counterfeit and that Agent Boswell had confirmed his suspicion.

When Sergeant Turner talked to Appellant by phone, Appellant denied passing money to anybody.

---

[2]We note that the serial number matches the serial numbers on five of the fifteen photocopied GameStop $50 bills—those found in the middle column of State's Exhibit 1.

7

**6.     Accomplice Witness Edward Nunley Testified That He Sold Appellant the Counterfeit $50 Bills.**

Accomplice witness Nunley testified:

- Around November 2014, he received about $41,000 in counterfeit money from a one-time drug deal in which he acted as the middleman;

- Most of the counterfeit money was in $50 bills;

- Appellant asked Nunley about the counterfeit money, and Nunley told Appellant that the money was in fact counterfeit;

- Appellant bought the counterfeit $50 bills from Nunley with cash;

- Appellant told Nunley that he bought "a TV and a PlayStation and something" with the counterfeit money;

- Appellant told Nunley that he bought games with the counterfeit money at GameStop and that he also spent the money at Walmart, on ordering in food, and for a single night's stay at a motel;

- Appellant called, texted, or went to see Nunley about the counterfeit money six or seven times; and

- Appellant sent Nunley a text stating, "Bro I need them bills," referring to the counterfeit money.

The trial court also admitted the text message, apparently sent more than three weeks after the GameStop forgery, into evidence.

## II.     DISCUSSION

### A.     The Accomplice Testimony Was Sufficiently Corroborated.

In part of his first issue, Appellant challenges the sufficiency of the evidence corroborating Coleman's and Nunley's accomplice testimony implicating Appellant in the forgery. The accomplice-witness rule, set out in Article 38.14 of the code of criminal procedure, provides that "[a] conviction

8

cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[,] and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005).

**1. We Review the Nonaccomplice Evidence for Evidence That Tends to Connect Appellant to the Forgery.**

The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App.), *cert. denied*, 552 U.S. 1028 (2007). When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). The sufficiency of nonaccomplice evidence is judged according to the facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). We do not independently construe the nonaccomplice evidence but instead defer to the factfinder's resolution of it. *Id.*

To meet the rule's requirements, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Nor is it necessary for the

9

corroborating evidence to directly link the accused to the commission of the offense. *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016); *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). Rather, the evidence, whether direct, circumstantial, or both, must show that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith*, 332 S.W.3d at 442; *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

While a defendant's mere presence at the scene of a crime is insufficient to corroborate accomplice testimony, *Druery*, 225 S.W.3d at 498, "proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Smith*, 332 S.W.3d at 443. Additionally, circumstances that are apparently insignificant may nevertheless constitute sufficient evidence of corroboration. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999); *Simmons v. State*, 205 S.W.3d 65, 73 (Tex. App.—Fort Worth 2006, no pet.). Finally, an accomplice's out-of-court statement may not be used as corroboration, *Smith*, 332 S.W.3d at 439, but it is also not evidence requiring corroboration under Article 38.14, *Bingham v. State*, 913 S.W.2d 208, 209 (Tex. Crim. App. 1995) (op. on reh'g).

## 2. The Nonaccomplice Evidence Tended to Connect Appellant to the GameStop Forgery.

Deferring to the jury's resolution of the evidence, GameStop casher Cook:

- Identified Appellant in a lineup with 70–80% certainty as the man who accompanied Coleman when she attempted to buy two Xboxes with fifteen counterfeit $50 bills;

- Identified Appellant in court as the man in the GameStop surveillance video with the woman; and

- Testified that when he watched the surveillance video, he saw the man give the woman "a small fold of cash."

Agent Boswell, Sergeant Turner, and Walmart Asset Protection Manager Baughman corroborated Cook's testimony that all the bills were counterfeit. The jury saw the GameStop video, still photos taken of portions of the video, the Walmart video, and still photos taken from it; furthermore, the jury had the opportunity to observe Appellant at trial. Viewing the nonaccomplice evidence in its totality, we hold that a rational jury could have found that it sufficiently tended to connect Appellant to the forgery offense with which he was charged. *See* Tex. Code Crim. Proc. Ann. art. 38.14; *Smith*, 332 S.W.3d at 443; *Davis v. State*, 68 S.W.3d 273, 281–82 (Tex. App.—Dallas 2002, pet. ref'd); *see also Brown v. State*, 270 S.W.3d 564, 567–69 (Tex. Crim. App. 2008), *cert. denied*, 556 U.S. 1211 (2009). We therefore hold that the testimony of accomplices Deitra Coleman and Edward Nunley was sufficiently corroborated and properly considered by the jury. We overrule this portion of Appellant's first issue.

11

**B.**    **The Evidence Is Sufficient to Support Appellant's Conviction.**

In his seventh and eighth issues, Appellant challenges the sufficiency of the evidence to support his conviction. Appellant does not challenge the finding that the $50 bills were forged writings. Instead, he specifically contends that (1) insufficient evidence identified him as the person who passed the bills (Issue Seven) and (2) insufficient evidence showed that he had the requisite mental state to commit forgery (Issue Eight).

**1.**    **We Review All the Evidence in the Light Most Favorable to the Verdict.**

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility

12

of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

**2.  The Jury Could Have Found Appellant Guilty of Forgery as a Principal or a Party.**

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. Tex. Penal Code Ann. § 7.01(a) (West 2011). A person is criminally responsible for an offense committed by another's actions if,

13

acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). The law of parties need not be pled in the indictment. *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002); *Frank v. State*, 183 S.W.3d 63, 73 (Tex. App.—Fort Worth 2005, pet. ref'd). In determining whether a defendant is a party, the factfinder may rely on:

- Events before, during, and after the commission of the crime;
- The defendant's acts showing an understanding and common design; and
- Circumstantial evidence.

*Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101 (1986); *Frank*, 183 S.W.3d at 73.

The indictment charged Appellant as a principal. It provided that on or about December 27, 2014, Appellant,

> intentionally, with intent to defraud or harm another, possess[ed] with intent to pass[] forged writings knowing such writings to be forged, and such writings had been so made that they purported to be the act of Timothy Gaithner and Henry M. Paulson, Jr. who did not authorize the act and said writings were or purported to be part of an issue of money . . . .[3]

*See* Tex. Penal Code Ann. § 32.21(a)–(b).

The jury charge allowed the jury to convict Appellant as a principal or as a party. It provided,

---

[3]Our quotation of the indictment does not include its convention of using all capital letters in the allegation.

14

A person commits the offense of forgery if he forges a writing with intent to defraud or harm another.

"Forge" means to possess any writing that has been altered, made, completed, executed, or authenticated so that it purports to be the act of another who did not authorize that act with the intent to pass the writing and the writing is or purports to be part of an issue of money.

"Writing" includes printing or any other method of recording information; money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and symbols of value, right, privilege, or identification.

"Possession" means actual care, custody, control, or management.

The jury charge also included an explanation of the law of parties and accomplices as a matter of law. The application paragraph of the jury charge provided,

Now, if you find from the evidence beyond a reasonable doubt that on or about the 27th day of December 2014, in Tarrant County, Texas, the defendant, Reginald J. Qualls, then and there intentionally, with intent to defraud or harm another, possess[ed] with intent to pass, forged writings, knowing such writings to be forged, and such writings had been so made that they purported to be the act of Timothy Gaithner and Henry M. Paulson, Jr., who did not authorize the act, and said writings were or purported to be part of an issue of money of the tenor following: fifteen $50 bills; or that the defendant, Reginald J. Qualls, acting with the intent to promote or assist in the commission of the offense of forgery, encouraged, aided, or attempted to aid Deitra Coleman to commit the offense of forgery, then you will find the defendant guilty of the offense of forgery.

**3.    The Evidence Sufficiently Showed That Appellant Forged the $50 Bills Coleman Left at GameStop.**

In his seventh issue, Appellant contends that the evidence was insufficient to prove that he was the perpetrator of the GameStop forgery because cashier

15

Cook could not identify him absolutely, the GameStop surveillance video was fuzzy and did not unequivocally identify Appellant, and Coleman's testimony was uncorroborated and should be struck. We have already rejected Appellant's complaint that Coleman's testimony was not sufficiently corroborated. Further, the jury as factfinder viewed not only the GameStop surveillance video but also the Walmart surveillance video and observed Appellant at trial.

Additionally, FWPD Sergeant Turner testified that Coleman told him that Appellant gave her the money to buy the Xboxes at GameStop, and TCDA Investigator Weber testified that she told him that Appellant gave her $600. Finally, Nunley testified that Appellant told him that he bought games from GameStop with the counterfeit money that he purchased from Nunley. Based on our review of the evidence in a light most favorable to the verdict, we hold that a rational jury could have found that Appellant committed the forgery, whether as a principal or party, beyond a reasonable doubt. We overrule Appellant's seventh issue.

**4.    The Evidence Sufficiently Showed that Appellant Had the Requisite Intent to Commit Forgery.**

In his eighth issue, Appellant contends that "there was insufficient evidence of the elements intentionally or knowingly." He argues specifically that there was insufficient evidence that:

- He had possessed the counterfeit bills and intended to pass them;

- He had intended to defraud or harm another; and

16

- He knew the bills were counterfeit.

Cashier Cook testified that his review of the surveillance video showed that the black male handed the black female who tried to buy the Xboxes "a small fold of cash" before she gave Cook the $50 bills. While Coleman denied at trial that what Appellant handed her was money, FWPD Sergeant Turner testified that Coleman had said that Appellant gave her the bills to spend at GameStop, TCDA Investigator Weber testified that Coleman had told him that Appellant gave her $600, and Sergeant Turner testified that she told him that the money had originally come from Nunley.

Similarly, while TCDA Investigator Weber testified that Coleman denied any knowledge of the counterfeit nature of the bills Appellant received from Nunley, Nunley testified that Appellant asked him about the counterfeit bills, texted him about obtaining them, and finally bought them from Nunley for cash (at a discount) even though Nunley had told him that the bills were counterfeit. Nunley also testified that Appellant told him that one of the ways he had spent the counterfeit bills was in buying games at GameStop. Finally, the jury saw the GameStop surveillance video as well as the Walmart surveillance video.

We defer to the jury's resolution of conflicts in the evidence. *See Murray*, 457 S.W.3d at 448–49. A rational jury could have concluded beyond a reasonable doubt that Appellant had the requisite intent to commit forgery as charged, whether as a principal, *see, e.g.*, *Sherrod v. State*, No. 03-14-00584-CR, 2016 WL 6156227, at *5 (Tex. App.—Austin Oct. 19, 2016, no pet.) (mem.

17

op., not designated for publication), or as a party, *see, e.g.*, *Gaines v. State*, No. 03-08-00251-CR, 2009 WL 1657566, at *2 (Tex. App.—Austin June 9, 2009, no pet.) (mem. op., not designated for publication).  We overrule Appellant's eighth issue.

**C.**    **The Trial Court Did Reversibly Err By Making Any of the Challenged Evidentiary Rulings.**

In his remaining issues, Appellant challenges various evidentiary rulings of the trial court.

We review the trial court's decision on the admissibility of evidence for an abuse of discretion.  *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).  The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.  *Id.*  If the trial court's decision to admit or exclude evidence is correct under any applicable legal theory, we will uphold that decision even if the trial court gave a wrong or incomplete reason for its ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

**1.**    **Appellant Forfeited His Complaint That the Trial Court Erred by Admitting Accomplice Testimony.**

In the remainder of his first issue, Appellant complains that the trial court erred by admitting "co-defendant" testimony—the testimony of accomplice witnesses Deitra Coleman and Edward Nunley—without sufficient corroboration. By failing to object on this ground in the trial court, Appellant forfeited this complaint.  *See* Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670,

18

674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013).

Regardless, Article 38.14 of the code of criminal procedure is a rule for sufficiency review, not an evidentiary rule. Tex. Code Crim. Proc. Ann. art. 38.14; *Kennedy v. State*, 193 S.W.3d 645, 662 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g en banc). Article 38.14 does not govern the admissibility of evidence; rather, it governs determinations of sufficiency of the evidence when an accomplice testifies. *Kennedy*, 193 S.W.3d at 662. We have already held that the nonaccomplice evidence sufficiently corroborated Nunley's and Coleman's testimony. We therefore overrule the remainder of Appellant's first issue.

### 2. The Trial Court Did Not Abuse its Discretion by Refusing to Strike Agent Boswell's Testimony.

In his fifth issue, Appellant contends that the trial court abused its discretion by refusing to strike Special Agent Jason Boswell's testimony for allegedly violating "the Rule."

At trial, the State invoked the Rule before the first witness testified. Agent Boswell was not sworn in until the next day, immediately before he testified, and the trial court explicitly placed him under the Rule before he began testifying. After the first round of Boswell's direct examination and well into his cross-examination by defense counsel, the following exchange occurred:

> Q.    . . . . You've talked with Detective Turner about this case; is that right?

19

A. I have.

Q. Okay. When was the last time you talked to Detective Turner about this case?

A. About the significance of the case or what's going on in the case—

. . . .

Q. . . . . Any of the above.

A. Before I walked in the courtroom.

Q. Okay. Are you aware that the Rule was invoked at the time that—that you were talking with Detective Turner?

A. No. What do you mean rule? Which rule?

After Agent Boswell answered, defense counsel moved to strike all of his testimony on the basis that he had violated the Rule. The trial court stated, "I didn't swear this witness in and place him under the Rule until right before he testified. If y'all want the people all sworn in, that are testifying, together, I would . . . have done that. Nobody asked me to do it." The record confirms the trial court's statement.

The trial court swore Sergeant Turner in and expressly placed him under the Rule when he testified after Agent Boswell.

### a. Agent Boswell Violated the Rule.

Texas Rule of Evidence 614 provides that at a party's request, the trial court must order witnesses excluded from trial so they cannot hear the other testimony. Tex. R. Evid. 614. The purpose of "the Rule" is "to prevent the testimony of one witness from influencing the testimony of another, . . . by one

20

witness either overhearing the testimony of another witness or talking to that witness regarding his testimony." *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989) (citations and internal quotation marks omitted); *see Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005).

The code of criminal procedure addresses the Rule in Chapter 36. *Russell*, 155 S.W.3d at 179–80. Article 36.03(e) provides:

> At the commencement of a trial, the court shall admonish each witness who is to testify as to those persons whom the court determines the witness may talk to about the case before the trial ends and those persons whom the witness may not talk to about the case. The court may punish as contempt a witness who violates the admonishment provided by the court.

Tex. Crim. Proc. Code Ann. art. 36.03(e) (West 2007). Article 36.05 states:

> Witnesses under rule shall be attended by an officer, and all their reasonable wants provided for, unless the court, in its discretion, directs that they be allowed to go at large; but in no case where the witnesses are under rule shall they be allowed to hear any testimony in the case.

*Id.* art. 36.05. Finally, Article 36.06 provides:

> Witnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under rule. The officer who attends the witnesses shall report to the court at once any violation of its instructions, and the party violating the same shall be punished for contempt of court.

*Id.* art. 36.06.

Upon invocation of the Rule, a witness should not listen to testimony in the case or talk about the case to others absent permission of the trial court. *Id.* arts. 36.03(e), 36.05, 36.06. Even a witness not yet sworn or admonished about the

21

Rule violates it by doing so. *See, e.g.*, *Davis v. State*, 872 S.W.2d 743, 745–46 (Tex. Crim. App. 1994); *Loris v. State*, Nos. 02-11-00464-CR, 02-11-00465-CR, 02-11-00466-CR, 2013 WL 3968079, at *4 (Tex. App.—Fort Worth Aug. 1, 2013, pet. ref'd) (mem. op.; not designated for publication) (indicating that if a witness viewed a report after the Rule was invoked but before he was sworn, a violation occurred); *Townes v. State*, No. 04-10-00796-CR, 2012 WL 566000, at *3 (Tex. App.—San Antonio Feb. 15, 2012, pet. ref'd) (mem. op., not designated for publication) (concluding the Rule was violated even though only one of the two challenged witnesses had been sworn and admonished regarding the Rule when they talked to each other) (relying on *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 120 (Tex. 1999) (op. on reh'g) ("[A] court may, in its discretion, exclude the testimony of a prospective witness who technically violates the Rule even though the witness was never actually placed under the Rule.")).

The State invoked the Rule before testimony began. The conversation between Agent Boswell and Sergeant Turner took place the second day of testimony but before either testified. Even though the record does not indicate that either Agent Boswell or Sergeant Turner was present when the Rule was invoked, we nevertheless hold that Agent Boswell violated the Rule. *See Townes*, 2012 WL 566000, at *3.

### b. The Trial Court Did Not Abuse Its Discretion by Denying Appellant's Motion to Strike Agent Boswell's Testimony.

A violation of the Rule, however, is not necessarily reversible error. *Archer*

*v. State*, 703 S.W.2d 664, 666 (Tex. Crim. App. 1986). A trial court has discretion to admit the testimony from a witness who violated the Rule. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App.), *cert. denied*, 522 U.S. 827 (1997); *Archer*, 703 S.W.2d at 666; *Townes*, 2012 WL 566000, at *2. An abuse of discretion occurs when the violative testimony prejudices or harms the defendant. *Archer*, 703 S.W.2d at 666; *see Townes*, 2012 WL 566000, at *3.

Given the situation before us—two State's witnesses who also appeared on the State's witness list conferring after the Rule was invoked but before giving their testimony, we assess prejudice to Appellant by asking two questions:

(1)     Did the witness confer with another witness?

(2)     Did the witness's testimony corroborate testimony of the witness he conferred with or contradict defensive testimony?

*See Archer*, 703 S.W.2d at 666. When "two or more State['s] witnesses violate the rule by conferring on an issue bearing on the guilt or innocence of the accused and about which they later testify, injury or prejudice flows from testimony that either corroborates another witness for the prosecution or contradicts defensive testimony on that issue." *Id.* at 667.

After the trial court explained that it had not placed Agent Boswell under the Rule until immediately before his testimony, the prosecutor offered an explanation of the two officers' conversation: "In addition, Your Honor, we had to obtain the money from Detective Turner. That was the conversation that we had outside. That he [Agent Boswell] needed to observe the money." Appellant did

23

not object. Agent Boswell and the prosecutor both admitted that a conversation with Sergeant Turner about the case had taken place; the first prong of the test for prejudice is therefore satisfied. *See id.*

The second prong, however, is not satisfied. When defense counsel's cross-examination of Agent Boswell continued, the following exchange occurred:

> Q. When you were talking to Detective Turner about this case, how much time do you think that you've spent over the last two days talking with him about this case?
>
> A. Twenty seconds.
>
> Q. That's a long time.
>
> . . . .
>
> Q. . . . . What did you use to prepare your testimony today?
>
> A. Just my knowledge on the case.
>
> Q. Did you have any notes that you referred to?
>
> A. No, sir.
>
> . . . .
>
> Q. . . . . Any of the voluntary statements?
>
> A. No. No, sir, I haven't reviewed any of those.
>
> Q. Okay. Did you review any of the police reports?
>
> A. No, sir. It's my understanding I was being here to testify on the difference between genuine currency and what was involved in this case.
>
> Q. . . . . How much time did you spend with the prosecution getting ready for this case?
>
> A. Ten minutes, 15 minutes.

24

Defense counsel did not ask Agent Boswell what he and Sergeant Turner had discussed for those twenty seconds, object that Sergeant Turner had violated the Rule, or question Sergeant Turner about his interaction with Agent Boswell.

We cannot glean from the record that in their brief conversation, Agent Boswell and Sergeant Turner spoke on an "issue bearing on the guilt or innocence of [Appellant] and about which they [would] later testify." *See id.* We therefore cannot conclude that Appellant was harmed by the interaction between the two men after the Rule was invoked but before they testified. Consequently, we hold that the trial court did not abuse its discretion by refusing to strike Agent Boswell's testimony. We overrule Appellant's fifth issue.

**3. The Trial Court Did Not Abuse Its Discretion by Admitting the Property Envelopes of Counterfeit Bills Collected from GameStop and Walmart.**

In his sixth issue, Appellant contends that the trial court abused its discretion by admitting the property envelopes containing the actual counterfeit bills collected from GameStop (State's Exhibit 18) and Walmart (State's Exhibit 20) "without a proper chain of custody."

**a. The Record Traces the Evidence from Its Respective Store to Trial.**

FWPD Officer Brian Marleau testified that he was dispatched to GameStop after the forgery, and the manager gave him the $50 bills. Officer Marleau put the bills in a sealed property envelope, on the back of which he wrote his initials

and badge number.  Late in the trial, the State moved to admit the property envelopes containing counterfeit bills used at GameStop (State's Exhibit 18) and at Walmart (State's Exhibit 20) while FWPD Sergeant Turner was testifying.

Regarding State's Exhibit 18, Sergeant Turner testified:

- He was a detective in the economic financial crimes unit at the time of the offense and was assigned the GameStop investigation in January 2015;

- Officer Marleau collected the money from the GameStop, and at some point, another officer, Detective Allen, checked the money out of the property room and hand-delivered it to Turner;

- When Allen gave the envelope to Turner, it had not been opened;

- Turner opened the envelope containing the money more than once but resealed it each time by stapling it; and

- On the second day of trial, he turned the sealed envelope over to TCDA Investigator Mike Weber.

Regarding State's Exhibit 20, Sergeant Turner testified:

- It contained the evidence from Walmart;

- Detective Darak handed him the exhibit;

- It contained six counterfeit $50 bills and seventeen counterfeit $10 bills; and

- It was checked out of the property room for his investigation of the counterfeit case.

Appellant's attorney took Sergeant Turner on voir dire.  On voir dire, he testified:

- He kept the sealed evidence in his locked desk;

- When he testified, the key to his desk was at his home;

- When he was on-duty, he had possession of his desk key; and

26

- He did not have personal control of the key at all times.

The State's Exhibit 20 property envelope confirms Sergeant Turner's other testimony on voir dire that FWPD Officer Simon took possession of the bills at Walmart and placed them in the property room.

Finally, the record reflects that the prosecutor showed both sealed envelopes and their contents to Agent Boswell when he testified.

### b. Only Appellant's Complaint Raised at Trial is Preserved for Appeal.

Appellant's complaint on appeal is much broader than his chain-of-custody objection at trial. At trial, Appellant's attorney objected to the admissibility of State's Exhibits 18 and 20 only on the ground that Sergeant Turner did "not keep control over his key at all times and the key . . . is used to lock and unlock a desk that he received from somebody else and passes along to someone else." The trial court overruled the objection and admitted the two exhibits. This is the only preserved complaint included in Appellant's sixth issue; Appellant forfeited all other complaints raised in his sixth issue by not raising them in the trial court. *See* Tex. R. App. P. 33.1(a)(1); *Douds*, 472 S.W.3d at 674; *Everitt*, 407 S.W.3d at 262–63. We address only his preserved complaint on the merits.

### c. The Evidence Sufficiently Supports a Finding That the Challenged Exhibits Contain the Property Envelopes of Forged Bills from GameStop (State's Exhibits 18) and Walmart (State's Exhibit 20).

As the Texas Court of Criminal Appeals has explained,

27

[T]he evidentiary rules do not specifically address proper chain of custody, [but] they do state that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims. . . . Absent evidence of tampering or other fraud, . . . problems in the chain of custody do not affect the admissibility of the evidence. Instead, such problems affect the weight that the fact-finder should give the evidence, which may be brought out and argued by the parties.

*Druery*, 225 S.W.3d at 503–04 (footnotes omitted). Additionally, proof validating the initial and terminal links of the chain of custody supports the admission of evidence absent evidence of tampering, modifying, or commingling. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 951 (1990); *Hall v. State,* 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd*, *improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001). Without proof of tampering, altering, or commingling the challenged evidence, gaps in the chain of custody go to the weight of the evidence, not its admissibility. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). Finally, proof of only an opportunity to tamper, alter, or commingle the challenged evidence is not sufficient to mandate its exclusion. *Darrow v. State*, 504 S.W.2d 416, 417 (Tex. Crim. App. 1974); *Patel v. State*, No. 2-08-032-CR, 2009 WL 1425219, at *2 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op., not designated for publication).

The evidence in the record sufficiently supports a finding that State's Exhibit 18 contains the counterfeit $50 bills from GameStop and that State's Exhibit 20 contains the counterfeit bills collected from Walmart. The evidence

28

also sufficiently traces the exhibits from their respective stores to the hands of the investigating officer, Sergeant Turner, and finally to the prosecutor at trial. Appellant's complaints about Sergeant Turner not always having personal control of the key to his desk and having used desks during the case to which others might have had keys raise only the spectre of tampering and do not justify exclusion of the exhibits. *See Darrow*, 504 S.W.2d at 417; *Patel*, 2009 WL 1425219, at \*2. The trial court did not abuse its discretion by admitting the two exhibits. We overrule Appellant's sixth issue.

**4. Any Error in Admitting Photographs of the GameStop Property Envelope and the GameStop Bills Was Harmless.**

In Appellant's second and third issues, he complains on predicate and best-evidence grounds about the trial court's admission of State's Exhibits 1, 2, and 3—photographs of the fronts and backs of the fifteen $50 bills Coleman left at GameStop and the property envelope containing them, respectively. At trial, the State showed Officer Marleau State's Exhibits 1, 2, and 3, and he testified:

- The pictures showed the fifteen $50 bills he received on December 27, 2014, at GameStop;

- He placed the bills in a sealed property envelope and wrote his badge number and initials on the back of it; and

- While he could not tell from the photos that the bills in the photos were the same bills he picked up, because he had not tagged the individual bills, he assumed that the bills in the photographs were the actual bills he had collected from GameStop because they were pictured with the property envelope he had initialed.

Appellant objected to the admission of the photos on the ground that Officer Marleau was "unable to authenticate" the photographed $50 bills as the "actual[] . . . items that were placed in the . . . evidence bag." Appellant also objected that Marleau could not lay the proper predicate because he could not "reasonably tell th[e] Court th[ese] photo[s] accurately represent[] the circumstances at the time the photo[s] w[ere] taken." The prosecutor told the trial court that the actual bills would be forthcoming, and the trial court overruled the objection.

Cashier Cook also testified that the photos of the counterfeit bills appeared to show the bills that he received from Coleman because ten of the photographed bills had the same serial number, five had the same other serial number, and the $50 bills Coleman gave him were proportioned in that same way.

Finally, Sergeant Turner answered affirmatively when asked if State's Exhibits 1, 2, and 3 "purport to be photographs of the package for State's Exhibit 18 and what is contained within[.]"

We have already upheld the admission of State's Exhibit 18—the actual property envelope and counterfeit $50 bills collected at GameStop. Error in the admission of the photographs of the items included in State's Exhibit 18, if any, was therefore harmless. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010), *cert. denied*, 562 U.S. 1142 (2011); *Leday*, 983 S.W.2d at 716–18. We overrule Appellant's second and third issues.

**5.** **The Admission of Walmart Asset Protection Manager Baughman's Testimony That the Bills Photographed in State's Exhibits 1 and 2 Were Counterfeit Was Harmless.**

In his fourth issue, Appellant contends that the trial court abused its discretion by allowing Walmart Asset Protection Manager Baughman to offer expert testimony that the bills photographed in State's Exhibits 1 and 2 and used at GameStop were counterfeit. Baughman had already offered similar testimony about the bills used at Walmart with no objection. Further, other witnesses, both before and after Baughman, testified that the GameStop bills were counterfeit with no objection. Specifically, GameStop cashier Cook contrasted the bills with the genuine article:

- The first bill he checked lacked a security strip and watermark, "didn't feel normal," and "felt different" than money;

- The fifteen bills had only two different serial numbers among them;

- Many of the bills had the same stamp on the back;

- The bills looked faded, "as the[ir] ink [wa]s kind of washed away;" and

- His manager agreed that they were not real.

Additionally, Agent Boswell and Sergeant Turner testified that the bills were counterfeit.

A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection before or after the complained-of ruling. *Estrada*, 313 S.W.3d at 302 n.29 (citing *Leday*, 983 S.W.2d at 718); *Lane v State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004).

31

Further, to the extent Appellant's issue focuses on the fact that Baughman's challenged testimony concerned photos of the counterfeit bills rather than the bills themselves, we have already upheld the admission of the actual bills by overruling Appellant's sixth issue. Thus, error, if any, in the admission of Baughman's testimony that the bills in the photographs in State's Exhibits 1 and 2 were counterfeit was harmless. *See Estrada*, 313 S.W.3d at 302 n.29; *Leday*, 983 S.W.2d at 718. We overrule Appellant's fourth issue.

### III.    CONCLUSION

Having overruled Appellant's eight issues, we affirm the trial court's judgment.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  SUDDERTH, C.J.; KERR and PITTMAN, JJ.

PUBLISH

DELIVERED:  April 12, 2018