

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00212-CR
_____


DANIEL NICHOLAS VILLAZANA, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 276th District Court
Camp County, Texas
Trial Court No. CF-22-02923


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Camp County jury convicted Daniel Nicholas Villazana of first-degree murder and assessed his sentence at forty-two years' imprisonment. *See* TEX. PENAL CODE ANN. § 19.02 (Supp.). In two issues, Villazana claims the trial court erred in (1) allowing certain expert testimony over his objections because the State failed to give timely notice of its intent to call these witnesses and (2) allowing testimony over his objection of a punishment-phase witness who violated "the Rule."[1] Finding no error, we affirm the trial court's judgment.

## I. Background

On January 30, 2022, Villazana and others from Quinlan, Texas, attended a house party in Pittsburg, Texas. When the party's hosts decided to call it a night, a fight ensued between a member of the Quinlan group and one of the hosts. The Quinlan group left but almost immediately circled back to the party. As the Quinlan group drove back by, multiple shots were fired towards the remaining partygoers. Two individuals were shot, one of whom died at the scene.

An investigation indicated the Quinlan fighter and Villazana were in the car from which the shots were fired. As they drove past the party, Villazana was seen shooting a gun while leaning out the passenger window and up over the roof of the car. John Vance, a Texas Ranger, testified that Villazana admitted to being at the house party on the night of the murder. Vance also testified that Villazana said he saw the Quinlan fighter, who was the driver of the vehicle

---

[1]"The Rule" is common parlance for Rule 614 of the Texas Rules of Evidence, discussed further below. *See* TEX. R. EVID. 614.

Villazana was in, firing a pistol from the window of the driver's seat. Evidence linked a shotgun, the type of weapon that killed the victim, to Villazana.

Villazana was indicted for murder and proceeded to a jury trial. Before the commencement of evidence, both parties invoked the Rule. During trial, Villazana objected to the testimony of certain expert witnesses on the basis that the State had not timely disclosed them. The trial court overruled Villazana's objection to the testimony of the first-offered, late-designated expert and later granted Villazana a running objection to the testimony of all late-designated expert witnesses.

The jury found Villazana guilty, and the trial proceeded to the punishment phase. During the punishment phase, Villazana objected to the testimony of one of the State's witnesses on the basis that the witness had violated the Rule by conversing with another potential witness outside the courtroom during the course of the proceedings. The trial court overruled Villazana's objection and allowed the testimony.

At the close of the punishment phase, the jury assessed Villazana's sentence at forty-two years' imprisonment, and the trial court imposed that sentence. Villazana appeals.

## II.     The Trial Court Did Not Abuse its Discretion in Allowing Expert Testimony

In his first issue, Villazana claims that "the trial court erred in allowing expert witness testimony of Cody Sartor and Corley Weatherford over [his objections] because the State failed to give timely notice under Article 39.14 of the Texas Code of Criminal Procedure."

### A.     Standard of Review and Applicable Law

Article 39.14(b) of the Texas Code of Criminal Procedure provides:

3

On a party's request not later than the 30th day before the date that jury selection in the trial is scheduled to begin . . . the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence [(rules regarding expert witnesses)].  Except as otherwise provided by this subsection, the disclosure must be made in writing in hard copy form or by electronic means not later than the 20th day before the date that jury selection is scheduled to begin . . . . On motion of a party and on notice to the other parties, the court may order an earlier time at which one or more of the other parties must make the disclosure to the requesting party.

TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Supp.).  A trial court is "within its discretion to fashion a remedy it deem[s] appropriate" in the event of an Article 39.14 discovery violation. *State v. Heath*, 696 S.W.3d 677, 708 (Tex. Crim. App. 2024).

A trial court's admission of evidence produced in violation of Article 39.14 is subject to a harm analysis.  *See Watkins v. State*, 619 S.W.3d 265, 291 (Tex. Crim. App. 2021); *Layman v. State*, No. 06-21-00003-CR, 2021 WL 5972092, at *3 (Tex. App.—Texarkana Dec. 17, 2021, pet. ref'd) (mem. op., not designated for publication).  "Because the error at issue is solely a statutory violation, the Rule 44.2(b) standard of harm for nonconstitutional errors governs the analysis," and any "error that does not affect [the defendant's] substantial rights must be disregarded."  *Stredic v. State*, 663 S.W.3d 646, 655 (Tex. Crim. App. 2022).  "An error affects substantial rights only if it has a substantial and injurious effect or influence in determining the jury's verdict."  *Id.*  "Put another way, an error does not affect substantial rights if an appellate court has fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect."  *Id.* at 655–56.

"If the trial court allows a witness who was not on the State's list to testify, we review that decision for an abuse of discretion."  *Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—

4

Houston [1st Dist.] 2014, pet. ref'd); *see Irsan v. State*, 708 S.W.3d 584, 611 (Tex. Crim. App. 2025); *Bluntson v. State*, No. AP-77,067, 2025 WL 1322702, at *6 (Tex. Crim. App. May 7, 2025); *Heath*, 696 S.W.3d at 703 (applying abuse of discretion standard in a review of exclusion of evidence due to an Article 39.14 discovery violation). "As long as the trial judge's ruling was within the 'zone of reasonable disagreement,' it will not be disturbed on appeal." *Irsan*, 708 S.W.3d at 611 (quoting *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018)); *see Heath*, 696 S.W.3d at 708. "Further, if the trial judge's ruling is correct on any applicable legal theory, the ruling will stand." *Irsan*, 708 S.W.3d at 616.

### B.     Analysis

On September 19, 2023, Villazana's newly appointed counsel filed a letter of representation in which he requested "discovery pursuant to Tex. Code Crim. Pro. Art. 39.14" and, specifically, "copies of all offense reports, audio and video recordings associated with this matter, witness statements, expert reports, any statements of the defendant and any co-defendant to be included with any of the other material." On November 1, 2023, Villazana filed a motion for a witness list, seeking a "list of the names and addresses of all witnesses the prosecution intend[ed] to call at any stage of the proceedings in this cause" and a "list of the names, addresses and professions of all expert witnesses the prosecution intend[ed] to call at any stage of the proceedings in this cause." On April 18, 2024, Villazana filed a motion requesting disclosure of expert witnesses.

On September 12, 13, and 24, 2024, prior to the September 30, 2024, trial date, the State filed original and amended witness and expert witness lists. The names of expert witnesses Cody

5

Sartor and Corley Weatherford, both experts on the contents of cell phones, did not appear on the witness list until the September 24, 2024, filing.

At trial, Villazana objected to the testimony of Weatherford on the basis that the State did not timely disclose him as a witness. The State disputed being served with Villazana's September 2023 request and argued that response to Villazana's April 2024 motion had not been required at an earlier time because that motion was not ruled on until the first day of trial. Further, the State claimed that there was "no surprise . . . that there was a phone dump, . . . that this witness would need to be able to talk about how he got it and authenticate[d] it." The State indicated that Villazana had access to the information regarding the "phone dump" for "heading towards a couple of years now, and it's not a surprise" but also stated if Villazana needed a continuance, it did not object. Villazana did not request a continuance and admitted that he had previously been provided with the expert's report. The trial court ruled that Weatherford's testimony was not a surprise to Villazana and that he would be allowed to testify.

After the trial court's ruling, the parties conferred, and Villazana then informed the trial court that he anticipated the State would be calling additional late-filed expert witnesses. Villazana indicated that he had been provided with the experts' reports, and he sought, and was granted, a running objection to each of those witnesses' testimony. Sartor was one of those additional expert witnesses.

At the hearing on Villazana's motion for new trial, the State admitted that its formal disclosure of the expert witnesses was not made more than twenty days prior to jury selection. However, the State represented that it had made available to Villazana, through a discovery link,

6

all relevant expert reports no later than eight months before trial. Villazana confirmed that his objection was that a formal listing of experts was not provided until less than twenty days before trial. Upon questioning from the trial court on whether Villazana had a response to the State's argument that information about the experts had been provided "well before that time," Villazana replied, "I don't have a response to that." The trial court overruled Villazana's motion for new trial.

The record here clearly demonstrates that the State did not identify Sartor and Weatherford as expert witnesses until fewer than twenty days remained before jury selection. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b). Yet, at no time did Villazana move for a continuance, even when the State indicated it would not be opposed to one. Villazana did not deny that he had received the experts' reports well in advance of the trial date, including "contact information [for the report authors] that's listed under Article 39.14(b)." At the hearing on his motion for new trial, Villazana characterized his objection to admission of the testimony as being based solely on the fact that the experts were not formally named until after the deadline. Neither at trial, nor in his motion for new trial, nor at the hearing on the motion did Villazana complain that the lack of the experts' names prevented him from being able to adequately prepare for trial. Not until appeal did Villazana argue that the State's failure to name the experts as witnesses signaled that it did not intend to call the experts as witnesses and that the late notice prevented him from adequately preparing for trial.

We consider this situation not unlike the one recently before the Texas Court of Criminal Appeals in *Heath*, although in *Heath*, the trial court excluded the evidence. In *Heath*, the

7

question before the court was whether the trial court had the authority to exclude a 9-1-1 recording offered by the State because the State violated Article 39.14 by failing to timely disclose the recording. *Heath*, 696 S.W.3d at 708. In concluding that the trial court did have that authority, it considered the civil procedure rules governing untimely discovery responses and noted that under those rules, "exclusion of evidence that was not timely disclosed is the default." *Id.* at 707 (citing TEX. R. APP. P. 193.6(a)). Significant to our analysis here, the court held that no finding of bad faith on the part of the State was required before properly excluding evidence for a violation of Article 39.14. *Id.* at 703. Instead, the State may violate Article 39.14 inadvertently—no bad faith is required—due to its obligations "to ascertain what evidence is available to it" and "to disclose that evidence to the defense as soon as practicable upon timely request." *Id.* at 708.

The *Heath* court's finding regarding bad faith is significant here, because prior to the ruling in *Heath*, the law regarding whether a trial court abused its discretion in allowing a late-designated expert witness to testify included considering "any showing of bad faith on the part of the prosecutor in the late designation and whether the defendant could reasonably anticipate that the witness would testify although his name was not previously disclosed." *Branum v. State*, 535 S.W.3d 217, 226 (Tex. App.—Fort Worth 2017, no pet.) (citing *Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992)). Removing the requirement of showing bad faith on the State's part per *Heath*, the remaining element of reasonable anticipation that the witness would testify is strikingly similar to the civil procedure rule's exception to the exclusion of late-disclosed

8

evidence upon a finding that allowing the evidence would not "unfairly surprise or unfairly prejudice the other parties." *Heath*, 696 S.W.3d at 707 (quoting TEX. R. CIV. P. 193.6(a)(2)).

Also applicable here, *Heath* reaffirms a trial court's "broad[] inherent authority" to deal with discovery violations. *See id.* at 706.

The record here demonstrates that the decision on the admission of the expert testimony was within the trial court's zone of discretion. Villazana was in possession of the experts' reports months in advance of trial. In the new trial hearing, Villazana did not articulate an argument for surprise under those circumstances. Though the State indicated that it would not oppose a motion for continuance, Villazana did not ask for one. We conclude the trial court was well within the zone of reasonable disagreement in allowing the expert witnesses to testify, and the trial court did not abuse its discretion in allowing the expert testimony from Sartor and Weatherford.

We overrule Villazana's first issue.

### III. The Trial Court Did Not Abuse its Discretion in Allowing Testimony of Witness Who Violated the Rule

In his second issue, Villazana claims "the trial court erred in allowing testimony over [his] objection of a punishment witness who violated the Rule."

#### A. Standard of Review and Applicable Law

"At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." TEX. R. EVID. 614. "Or the court may do so on its own." *Id.* "The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony." *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003).

9

"The purpose of 'the Rule' is 'to prevent the testimony of one witness from influencing the testimony of another, . . . by one witness either overhearing the testimony of another witness or talking to that witness regarding his testimony.'" *Qualls v. State*, 547 S.W.3d 663, 676 (Tex. App.—Fort Worth 2018, pet. ref'd) (quoting *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989)).

> The Texas Code of Criminal Procedure provides instruction in application of the Rule:
>
> At the commencement of a trial, the court shall admonish each witness who is to testify as to those persons whom the court determines the witness may talk to about the case before the trial ends and those persons whom the witness may not talk to about the case. The court may punish as contempt a witness who violates the admonishment provided by the court.

TEX. CODE CRIM. PROC. ANN. art. 36.03(e) (Supp.). "Witnesses, when placed under the rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.06.

We review a trial court's decision to admit "testimony from a witness who violated the Rule" for an abuse of discretion. *Qualls*, 547 S.W.3d at 677. "[W]hen a party complains of the admission of evidence in violation of the Rule," an appellate court "look[s] at whether the complaining party objected and was harmed." *Routier*, 112 S.W.3d at 590. "A violation of the Rule . . . is not necessarily reversible error." *Qualls*, 547 S.W.3d at 677. "An abuse of discretion occurs when the violative testimony prejudices or harms the defendant." *Id.*

> Two criteria that have been suggested for determining injury or prejudice [when a witness violates the Rule] are (a) whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the witness's testimony

10

contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard.

*Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (per curiam); *see Martinez v. State*, 186 S.W.3d 59, 65 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

### B.     Analysis

Both parties invoked the Rule before testimony began.  Shortly thereafter, the trial court swore the witnesses in and placed them under the Rule, including the two witnesses later alleged to have violated the Rule.

Before the punishment phase began, the State informed the trial court that Nathan Holder, a witness subpoenaed but not called by the State, had stated that Caleb Nicholson, another of the State's witnesses, had been talking about the case outside the courtroom.  Neither Nicholson nor Holder had testified during the guilt/innocence phase.  The parties questioned Nicholson outside the presence of the jury, and Nicholson testified that Holder asked him whether Sammy Garza was in the car when Villazana and others left the party.  Nicholson testified that he told Holder that yes, to his knowledge, Garza was in the car.

After questioning Nicholson, the State informed the trial court it would like to call Nicholson as a witness regarding an aggravated assault Villazana had allegedly perpetrated upon him.  After hearing the parties' arguments, the trial court determined that Nicholson had violated the Rule by discussing the case with Holder outside the courtroom.  Nevertheless, relying on *Bell*, the trial court determined "there was not an actual conference with another witness with regard to the testimony that [Nicholson] [wa]s [t]here to supply and, secondly, that it would not

11

contradict that conferring witness's testimony, and, in fact, there was no witness from the opposing side." The trial court allowed Nicholson's testimony.

Nicholson testified that he and Villazana belonged to the same friend group and that, no more than a year before the murder, Nicholson and some others were sitting in a car when Villazana pointed a gun to his head, asking where his dirt bike was. Nicholson said they denied having Villazana's dirt bike, and Villazana walked off. Nicholson testified that the gun Villazana used, a black pistol with a laser sight under the barrel and an extended clip, belonged to Villazana.

We agree with the trial court's reasoning under *Bell*. Since the parties agree that an out-of-court conference occurred between Nicholson and Holder, we look to the second *Bell* factor to determine whether Villazana was prejudiced by the allowance of Nicholson's testimony—that is, "whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard." *See Bell*, 938 S.W.2d at 50. As the trial court noted, Villazana offered no witnesses during the guilt/innocence phase. The only witness Villazana called during punishment was his mother. She did not testify about the incident when Villazana pulled a gun on Nicholson or whether Villazana owned a gun. And the witness Nicholson conferred with, Holder, did not testify.

The record does not reflect that Nicholson's testimony contradicted any defense testimony or corroborated testimony from Holder. *See id.* Said differently, the brief conversation between Nicholson and Holder did not involve an "issue bearing on the guilt or innocence of the accused and about which they [would] later testify." *See Archer v. State*, 703

12

S.W.2d 664, 667 (Tex. Crim. App. 1986). Thus, Villazana has not shown that he was harmed by the conversation that occurred between Nicholson and Holder after they were placed under the Rule. The trial court did not abuse its discretion in allowing Nicholson's testimony.

We overrule Villazana's second issue.

## IV. Conclusion

We affirm the judgment of the trial court.

Jeff Rambin
Justice

Date Submitted:     July 1, 2025
Date Decided:       December 31, 2025

Do Not Publish

13