

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00096-CR

———————————————

COLT DILLON GAULDING, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1581939R

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Colt Dillon Gaulding appeals his convictions on two counts of aggravated assault with the use or exhibition of a deadly weapon and two counts of assault causing bodily injury to a family member while having a prior conviction.[1]  On appeal, Gaulding argues in three related points that the trial court abused its discretion by admitting certain extraneous offense evidence pursuant to Article 38.371 of the Texas Code of Criminal Procedure.  We will affirm.

## II. BACKGROUND

### A. Gaulding and the Complainant Meet and Begin a Romantic Relationship

In 2013, the complainant, who had recently separated from her husband, met Gaulding while out with a friend.  After a short acquaintance, Gaulding and the complainant began a romantic relationship, and Gaulding quickly moved in with the complainant and her three children.

During their relationship, Gaulding and the complainant frequently consumed excessive amounts of alcohol and used marijuana together.  Gaulding also introduced the complainant to methamphetamine and Xanax.  Due in part to the couple's drug use, their relationship was fraught with violence and abuse.

---

[1]Gaulding was also charged with two counts of aggravated sexual assault but was found not guilty of these charges.

## B. The Needles, California Incident

Gaulding first physically abused the complainant while they were on a trip to Needles, California, to visit Gaulding's friend Ian. During the visit, the complainant was hospitalized after being injured in an off-roading car accident. While lying in bed recuperating at Ian's home, the complainant received a text message from an ex-boyfriend. After reading the text, Gaulding flew into a jealous rage. He climbed on top of the complainant and struck her in the face. Ian heard the commotion and told Gaulding to stop. Though the complainant was shocked and upset by this incident, she returned home with Gaulding and continued their relationship.

## C. The Luau Bar Incident

In May 2016, Gaulding physically abused the complainant again. After drinking at some clubs in Corpus Christi, Gaulding and the complainant began to argue. During the drive back to their home in Kingsville, Gaulding began striking the complainant in the face. Gaulding then grabbed the complainant's hair, pulled her head to his lap, and repeatedly punched her in the head.[2] When the assault stopped and the complainant was able to lift her head, she saw that they were in the parking lot of the Luau Bar in Kingsville. The complainant did not want to enter the bar because her face was bruised and her lip was bleeding, so Gaulding ordered her to tidy herself up before going inside. Once inside, the complainant sneaked away to the

---

[2]While Gaulding admitted that he had "backhanded" the complainant, he denied that he had pulled her head into his lap and punched her.

bathroom and escaped. The police were called, and Gaulding was arrested.[3] Despite this incident, Gaulding and the complainant stayed together.

## D. The Barbell Incident

In September 2017, another incident of physical abuse occurred. While Gaulding and the complainant were at Gaulding's father's house in Nueces County, Texas, Gaulding's brother arrived and began threatening to commit suicide. While Gaulding was talking to his brother and attempting to console him, the complainant injected herself into the conversation.[4] This angered Gaulding, and he slapped the complainant in the face with such force that she was knocked to the ground. Gaulding's brother witnessed the slap and immediately exited the room saying, "I don't want to have anything to do with this." Gaulding then began to kick and stomp on the complainant as she lay helplessly on the floor. The complainant called out to Gaulding's brother, who eventually returned and restrained Gaulding, allowing the complainant to grab her keys and flee.

As the complainant attempted to drive away, Gaulding grabbed a 45-pound barbell—a long bar to which weights can be added at each end—and threw it through

---

[3]Gaulding was ultimately charged with the misdemeanor offense of assault causing bodily injury to a family member and sentenced to community supervision, which was later revoked.

[4]The complainant claimed that she had been trying to dissuade Gaulding's brother from harming himself, but Gaulding testified that she had been encouraging him to do so.

4

the complainant's windshield.[5]  The barbell narrowly missed the complainant's head and came to rest in the back seat.  The complainant drove away to a safe place and then called police.  Gaulding was ultimately charged with aggravated assault with a deadly weapon, assault causing bodily injury to a family member with a previous conviction for the same, and continuous violence against the family.[6]

After this incident, Gaulding and the complainant remained apart for some time.  The complainant entered Oxford House, a drug treatment facility in Dallas, and remained sober for eight months.

## E.  Events Giving Rise to the Current Case

Shortly after leaving Oxford House, the complainant rekindled her relationship with Gaulding and began living with him in an Arlington hotel.  The complainant soon relapsed when Gaulding offered her methamphetamine, and the two began regularly using drugs while staying at the hotel.

On June 5, 2018, Gaulding and the complainant had dinner and drinks with another couple in the hotel restaurant.  Afterward, all four of them returned to Gaulding and the complainant's room where they continued to consume large quantities of alcohol and use methamphetamine.  At one point, the other couple

---

[5]Gaulding claimed that the complainant was not inside the vehicle when he hurled the barbell through the windshield.

[6]Gaulding initially received deferred adjudication for these charges but was ultimately adjudicated guilty of all three charges and sentenced to ten years in prison.

started arguing, and the complainant became angry and upset when Gaulding told the complainant that he thought the man was being abusive to the woman and wanted the complainant to help her.[7]

Once the other couple left, Gaulding began hitting the complainant in the face and ribs with his fists. The complainant escaped to the parking lot where she screamed for help to several people, including her friend Bobbie,[8] who also resided at the hotel. Gaulding chased the complainant, who threw herself to the ground. Gaulding then carried her—kicking and screaming—back to their hotel room.[9] Minutes later, Bobbie knocked on the door. Gaulding told the complainant to tell Bobbie that everything was fine and not to call the police. The complainant complied but winked as she did so, signaling to Bobbie and prompting her to immediately contact the police.

---

[7]The complainant explained that this upset her because Gaulding was trying to protect this woman whom he barely knew from physical abuse even though he had physically abused the complainant in the same manner.

[8]At times, Bobbie is referred to as "Bobby" in the reporter's record. Despite the spelling differences, the record references appear to refer to the same person.

[9]Gaulding's and the complainant's accounts differ regarding the manner in which Gaulding transported the complainant back to the room. The complainant testified that Gaulding grabbed her by her shorts, yanked her by her hair, and dragged her back inside. However, Gaulding denied pulling the complainant's hair or dragging her; rather, he claimed that he had carried her over his shoulder "[k]ind of like a caveman" back to the room.

After the door was closed, Gaulding grabbed a long knife and began pacing back and forth in anger. He threatened to kill the complainant, who curled up on the bed covering her face with her hand. Gaulding struck the complainant in the face and head while holding the knife and cut her hand. Gaulding then used the knife to cut off the complainant's clothing, and they had sex. They were still on the bed when police arrived and kicked in the door. The complainant grabbed a T-shirt to clothe herself and ran past the officers out the door.

Gaulding was placed under arrest and charged with two counts of aggravated sexual assault, two counts of aggravated assault with the use or exhibition of a deadly weapon, and two counts of assault causing bodily injury to a family member while having a prior conviction. In July 2021, a jury found Gaulding not guilty of aggravated sexual assault but guilty of the four remaining charges. Gaulding was sentenced to concurrent terms of incarceration ranging from twelve to forty years in length on the four counts of which he was convicted.[10] This appeal followed.

---

[10]Gaulding was sentenced to terms of thirty years and forty years on the two aggravated-assault counts and to terms of twenty years and twelve years on the two counts of assault causing bodily injury to a family member while having a prior conviction.

## III. DISCUSSION

In three points,[11] Gaulding argues that the trial court abused its discretion by admitting extraneous offense evidence of the Needles, California Incident; the Luau Bar Incident; and the Barbell Incident pursuant to Article 38.371 of the Texas Code of Criminal Procedure. Specifically, Gaulding asserts that the trial court erred by admitting this extraneous offense evidence because (1) it was offered only to show character conformity in violation of the Texas Rules of Evidence, *see* Tex. R. Evid. 404(b), and (2) its probative value was substantially outweighed by a danger of unfair prejudice, *see* Tex. R. Evid. 403.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (op. on reh'g). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that

---

[11]Because Gaulding's three points are interrelated, we will address them together. *See Phillips v. State*, No. 02-16-00049-CR, 2016 WL 6519118, at *2 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication); *see also Garcia v. State*, No. 05-19-00310-CR, 2020 WL 4013151, at *4 (Tex. App.—Dallas July 16, 2020, no pet.) (mem. op., not designated for publication); *Threadgill v. State*, No. B14-92-00710-CR, 1993 WL 187988, at *2 (Tex. App.—Houston [14th Dist.] June 3, 1993, pet. ref'd) (not designated for publication).

zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

## B. The Trial Court's Ruling

Prior to trial, the State gave notice of its intent to introduce extraneous offense evidence pursuant to Article 38.371 of the Texas Code of Criminal Procedure. Gaulding filed a motion in limine asking the trial court to prohibit the State from mentioning or alluding to any of his extraneous offenses. During a pretrial evidentiary hearing, the trial court ruled that pursuant to Article 38.371 the State could present evidence concerning the Needles, California Incident; the Luau Bar Incident; and the Barbell Incident.[12] In making its ruling, the trial court conducted a balancing test and determined that the potential prejudicial impact of the extraneous offense evidence did not outweigh its probative value. The trial court later admitted the evidence during trial over Gaulding's objections but gave an oral limiting instruction and repeated this limiting instruction in the written guilt–innocence jury charge.[13]

---

[12]The trial court ruled that the State could not present evidence of an additional 2015 incident in Kleberg County, Texas, because the State had failed to provide defense counsel with sufficient notice.

[13]The trial court instructed the jury, among other things, that it could consider the extraneous offense evidence "only . . . in determining the nature of the previous

9

## C. Admissibility under Article 38.371 and Rule 404(b)

Gaulding argues that the trial court abused its discretion by admitting the extraneous offense evidence because it was introduced merely to show that he acted in conformity with his character in violation of Rule 404(b). Tex. R. Evid. 404(b); *see* Tex. Code Crim. Proc. Ann. art. 38.371(b). Rule 404(b) precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion, but the rule allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). Those listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. Thus, while Rule 404(b) of the Texas Rules of Evidence limits character evidence, it is nevertheless a rule of inclusion. Tex. R. Evid. 404(b); *De La Paz*, 279 S.W.3d at 343; *Nash v. State*, Nos. 02-17-00236-CR, 02-17-00237-CR, 2018 WL 4495440, at *6 (Tex. App.—Fort Worth Sept. 20, 2018, pet. ref'd) (mem. op., not designated for publication).

As we have previously recognized, "Article 38.371, which applies to family-violence prosecutions, provides an additional non-character-conformity purpose for admitting extraneous-offense evidence." *James v. State*, 623 S.W.3d 533, 545 (Tex.

and subsequent relationship of . . . [the complainant] and . . . Gaulding . . . and for no other purpose."

10

App.—Fort Worth 2021, no pet.) (citing Tex. Code Crim. Proc. Ann. art. 38.371).

Though Article 38.371 explicitly proscribes the presentation of character evidence that is otherwise inadmissible under the Rules of Evidence or other laws, it expressly allows "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship" between the accused and the complainant. *Id.* at 545-56 (citing Tex. Code Crim. Proc. Ann. art. 38.371(b), (c)). Thus, Article 38.371(b) expressly provides for the admission of extraneous offense evidence regarding the nature of the relationship between an accused and a complainant. *James*, 623 S.W.3d at 546; *Mourning v. State*, No. 02-19-00168-CR, 2020 WL 6165309, at *4–5 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication); *see also Franco v. State*, No. 08-18-00040-CR, 2020 WL 3168560, at *8 (Tex. App.—El Paso June 15, 2020, no pet.) (not designated for publication) ("[T]he Legislature has determined under article 38.371 that the nature of the relationship itself is a permissible, non-character-conformity purpose for which evidence is admissible.").

Contrary to Gaulding's assertion, the complained-of extraneous offense evidence was not introduced to show character conformity. Rather, the State made very clear at the pretrial evidentiary hearing that it was offering the extraneous offense evidence to show the nature of the relationship between Gaulding and the complainant, and it was on this basis that the trial court allowed the evidence to be

admitted. Indeed, as noted above, the trial court issued limiting instructions to the jury explicitly directing them to consider the extraneous offense evidence "only . . . in determining the nature of the previous and subsequent relationship of . . . [the complainant] and . . . Gaulding . . . and for no other purpose." The nature of Gaulding and the complainant's relationship was an important factor in the case, and in addition to the extraneous offense evidence, the State also presented expert testimony to explain the dynamics of a relationship marked by violence. Because all of the complained-of extraneous offense evidence showed the nature of Gaulding and the complainant's relationship, it was admissible for that purpose under Article 38.371 and Rule 404(b). *See James*, 623 S.W.3d at 546. Accordingly, the trial court did not abuse its discretion by admitting this evidence over Gaulding's Rule 404(b) objection. *See id.*; *Gonzalez v. State*, 541 S.W.3d 306, 312–13 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

## D. Admissibility under Rule 403

Gaulding also argues that the trial court should have excluded the extraneous offense evidence under Rule 403. Otherwise admissible evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *see Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication). "Rule 403 favors

12

the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James*, 623 S.W.3d at 546–47 (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich*, 2019 WL 311153, at *7). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

13

## 1. Probative Value

The first two *Gigliobianco* factors assess "probative value," Rule 403's "first key phrase." *Id.* at 641. Probative value pairs "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation . . . with the proponent's need for that item of evidence." *Id.* When the State has "other compelling or undisputed evidence to establish" what the extraneous offense evidence "goes to prove," the value of the extraneous offense evidence is much less. *Id.* (quoting *Montgomery*, 810 S.W.2d at 390).

Here, the inherent probative force of the extraneous offense evidence is undisputed. As the State points out, the evidence's inherent probative force was strong because it provided context and insight into Gaulding's motivation for striking the complainant and showed how the abuse had escalated over time until the complainant had had enough. The extraneous offense evidence also rebutted Gaulding's theory that the abuse was mutual and just part of the couple's sexual foreplay or their usual, "toxic" dynamic.

With respect to the second factor, Gaulding asserts—in conclusory fashion—that the State did not need the extraneous offense evidence to prove its case against him. However, while the State had robust evidence of the charged assault, it still had a strong need for the extraneous offense evidence. As noted above, Gaulding's defense attempted to show that the abuse was mutual and just part of the couple's sexual foreplay. Thus, the extraneous offense evidence was necessary to show that

14

Gaulding's relationship with the complainant had been marked by violence and abuse, thereby rebutting the defense's theory and strengthening the inference that Gaulding had assaulted the complainant on this particular occasion.

Therefore, the first two factors weigh in favor of admission.

### 2. Danger of Unfair Prejudice, Confusion of the Issues, or Misleading the Jury

Having determined that the extraneous offense evidence had probative value, we must now weigh that probative value against the danger that this evidence would unfairly prejudice, confuse, or mislead the jury.[14] *See id.* Unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* Evidence is not excludable under Rule 403 if it is merely prejudicial; "all evidence against a defendant is . . . designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013); *see* Tex. R. Evid. 403. Thus, Rule 403 is not concerned with merely prejudicial evidence but instead with evidence that is *unfairly* prejudicial. Tex. R. Evid. 403; *Pawlak*, 420 S.W.3d at 811. "'[C]onfusion of the issues,' refers to a tendency to confuse or distract the jury from the main issues in the case. Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the

---

[14]As the Court of Criminal Appeals has recognized, the *Gigliobianco* factors may "blend together" in certain cases. *Id.* at 642. In his brief, Gaulding appears to lump his arguments for factors three, four, and five together under the broad heading of "und[ue] prejudice." Therefore, we consider these factors together.

main issues." *Gigliobianco*, 210 S.W.3d at 641. "Misleading the jury" involves the likelihood that a jury will place too much weight on the evidence for some reason not involving emotion. *Id.* "For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.*

Gaulding asserts that the prejudicial effect of the extraneous offense evidence is "obvious," that the jury would necessarily have given the evidence undue weight, and that, as a result, the jury "had no other option but to find [Gaulding] guilty." However, we are unpersuaded by Gaulding's oversimplified analysis. First, while the extraneous offense evidence is undeniably prejudicial, Gaulding has not shown that the evidence of the three incidents in question, which are similar in nature and seriousness to his charged offenses, is *unfairly* prejudicial. *See Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice."); *see also Payne v. State*, No. 02-17-00268-CR, 2019 WL 2223575, at *2 (Tex. App.—Fort Worth May 23, 2019, no pet.) (mem. op., not designated for publication) ("Although the [extraneous offense] evidence was necessarily prejudicial, it was not unfairly so compared to its probative value."). Moreover, as noted above, the trial court gave the jury clear limiting instructions restricting its consideration of the extraneous offense evidence to admissible purposes. These instructions—which we presume the jury followed, *see, e.g.*, *Thrift v.*

16

*State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)—equipped the jury to weigh the extraneous offense evidence properly and minimized the risk of the jury's improperly relying on such evidence in reaching its verdict. *See James*, 623 S.W.3d at 549. Further, because the evidence was not scientific or complex, there was little risk of jury confusion. *See Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force"). Finally, Gaulding's contention that the jury "had no other option but to find [him] guilty" is belied by the fact that the jury found Gaulding not guilty of two of the six offenses with which he was charged. The jury's split verdict suggests that it did not place undue weight on the extraneous offense evidence but rather was able to carefully and properly consider all of the evidence presented. *See Brito v. State*, No. 08-15-00196-CR, 2018 WL 3569616, at *9 (Tex. App.—El Paso July 25, 2018, pet. ref'd) (not designated for publication).

Therefore, we conclude that the third, fourth, and fifth *Gigliobianco* factors weigh in favor of admission. 210 S.W.3d at 641.

### 3. Likelihood of Undue Delay and Needless Repetition

*Giglioblanco*'s sixth factor addresses Rule 403's concerns regarding "undue delay" and the "needless[] present[ation of] cumulative evidence." Tex. R. Evid. 403; *James*, 623 S.W.3d at 550. "This factor focuses on how efficient the trial is, not on the risk of an erroneous verdict." *James*, 623 S.W.3d at 550. Here, while the presentation of extraneous offense testimony comprised a substantial portion of the trial, the

length of the evidentiary presentation was not inordinate, particularly given the lengthy history of Gaulding and the complainant's relationship and the bearing that the nature of their relationship had on the proceedings. Indeed, Gaulding has not asserted on appeal that the presentation of the extraneous offense evidence caused undue delay or was needlessly cumulative. Accordingly, we hold that this factor weighs only slightly, if at all, against admission.

### 4. Resolution

Weighing all six factors, we hold that the trial court did not abuse its discretion by concluding that the probative value of the extraneous offense evidence was not substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *Gigliobianco*, 210 S.W.3d at 641–42; *see James*, 623 S.W.3d at 551. As shown above, the probative value of the evidence was strong, and because the extraneous offenses were no more heinous than the charged offenses, the risk of unfair prejudice was relatively low. *See Norwood*, 2014 WL 4058820, at *5. This risk was further minimized by the trial court's limiting instructions. *See James*, 623 S.W.3d at 549. In addition, Gaulding's argument that the jury would "necessarily" have given "undue weight" to the extraneous offense evidence is undermined by the jury's split verdict. *See Brito*, 2018 WL 3569616, at *9.

18

Because we discern no abuse of discretion in the trial court's decision to admit the extraneous offense evidence, we overrule all three of Gaulding's points.[15]

## IV. CONCLUSION

Having overruled all three of Gaulding's points, we affirm the trial court's judgments.[16]

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 29, 2022

---

[15]In his brief, Gaulding asserts that he was harmed by the trial court's alleged error. However, because we have concluded that the trial court did not commit error in this case, we do not need to conduct a harm analysis. *See* Tex. R. App. P. 47.1; *Montoya v. State*, No. 13-12-00736-CR, 2014 WL 223228, at *2 n.7 (Tex. App.—Corpus Christi–Edinburg Jan. 16, 2014, pet. ref'd) (mem. op., not designated for publication).

[16]The trial court entered separate judgments for each of the charged offenses.