

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00088-CR

———————————————————

LADERRIS EUGENE KERSH, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1654968D

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

A jury convicted Appellant Laderris Kersh of the offense of sexual assault and assessed his punishment at 48 years' confinement and a $2,200 fine. The trial court sentenced him accordingly. Kersh argues in two issues on appeal that the trial court erred by admitting evidence of an extraneous sexual assault. We affirm.

## I. BACKGROUND

In December 2018, Kathryn Smith[1] had recently ended a bad relationship and was struggling emotionally. Kathryn began communicating with a man she knew as Josiah on an online dating website. By all accounts, things quickly became confusing and complicated. While Kathryn was exchanging messages with Josiah, another man she knew as Bryce began messaging her. Bryce claimed to be Josiah's brother. Kathryn exchanged messages with both Josiah and Bryce, and all of those messages were read to the jury.

In the messages, Kathryn said that she was struggling financially and needed money for her rent. While Josiah initially indicated that he would take care of her financially, he later told her that Bryce was actually the one who would pay for her rent and buy her things. Josiah also stated in the messages that he did not want to date her because she has children, but that Bryce wanted to date her. Josiah told

---

[1] Kathryn Smith is the assigned pseudonym in the State's indictment. The parties both use the pseudonym in their briefs because she is the mother of minor children. Tex. R. App. P. 9.10. We will also use the assigned pseudonym in this opinion.

Kathryn that Bryce was a virgin and planned to pay another woman $12,000 to take his virginity. Josiah encouraged Kathryn to move quickly with Bryce so that she could get that money.

Kathryn agreed to let Bryce come over, but she made clear that they would not have sex. Appellant testified at trial and admitted that he communicated with Kathryn using the name Bryce. Appellant said that he went to Kathryn's apartment but that she thought she was meeting a man named Bryce.

Kathryn was at her apartment with her infant son when Appellant, the man she knew as Bryce, came to her door. Kathryn put her son in his chair with some food while she went and sat beside Appellant on the couch. According to Kathryn, Appellant began touching her waist and leg, and she reminded him that they were just going to cuddle. Appellant became more aggressive, and Kathryn told him "no." Appellant then grabbed her by the pants and positioned himself behind her while holding her down by her neck. She was afraid for herself and for her son. Kathryn testified that Appellant put his penis into her vagina and that at some point she felt a "pop and a rush" and realized that she was bleeding. Appellant grabbed a towel and wiped the blood off of Kathryn and then just walked out of the door.

Kathryn checked on her son and found him sleeping. She called her friend Matthew, who is now her husband, to come help her. Kathryn also called the father of her children for help. He arrived and took her infant son. Kathryn called 911, but only reported that her son had been taken.

3

The following morning, Kathryn went to the hospital for treatment and reported that she was experiencing neck, back, and abdominal pain as well as vaginal bleeding and swelling. An Arlington police officer arrived at the hospital after being called by a nurse. The police officer took Kathryn to another hospital so that she could undergo a sexual assault examination.

Arlington Police Detective Jack Jenkins attempted to contact Kathryn several times after the sexual assault, but Kathryn would not return his calls, so he closed the case. According to Detective Jenkins, in August 2019 he reopened the case after he received a lead from the sexual assault kit conducted on Kathryn and identifying Appellant as a suspect. Detective Jenkins reached out to Kathryn and told her that he had a suspect. Kathryn met with Detective Jenkins and wanted to pursue charges. Kathryn testified over objection that she agreed to talk with Detective Jenkins after fourteen months when she found out that Appellant had sexually assaulted someone else before her.

Keira Thomas[2] testified over objection that Appellant sexually assaulted her. She explained that in March 2014 she was separated from her husband and going through a difficult time. Keira began talking to a man she identified as Appellant on a dating website, and she agreed to go with him to a coffee shop. Appellant picked her up, but drove her to his apartment instead of the coffee shop. Keira went inside Appellant's apartment, and they played a game on his phone. Appellant told Keira

---

[2] Keira Thomas is a pseudonym. *See* Tex. R. App. P. 9.10.

4

that he would take care of her financially. Keira testified that she and Appellant started kissing, and then he went to the bathroom. When he returned, Appellant flipped her around so that she was lying on her stomach, and then he pulled down her pants and sexually assaulted her. Keira said that Appellant also choked her during the sexual assault. Keira was in a lot of pain after the sexual assault, and she went to the hospital. The nurse called law enforcement to come to the hospital, and Keira was taken to another hospital for a sexual assault examination.

Although the State argued that Appellant was both Bryce and Josiah, Appellant maintained at trial that he had a friend named Josiah. Appellant admitted that he told Kathryn his name was Bryce. According to Appellant, both he and his friend Josiah were messaging Kathryn. Appellant said that he went to Kathryn's apartment and that they had consensual sex. Appellant testified that he cooperated with Detective Jenkins but admitted that he lied to the detective about certain details. At trial, Appellant also denied sexually assaulting Keira.

## II. ADMISSIBILITY OF EVIDENCE

Appellant argues in his first issue that the trial court erred by allowing Kathryn to testify that she pursued charges against him because she learned he had previously committed another sexual assault. In the second issue, Appellant argues that the trial court erred by allowing Keira to testify about an extraneous sexual assault. Appellant specifically argues in both issues that the testimony should have been excluded under

5

Rule 403 of the Texas Rules of Evidence because the probative value was substantially outweighed by the danger of unfair prejudice.

## A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (op. on reh'g). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

## B. KATHRYN'S TESTIMONY

During its redirect examination of Kathryn, the State requested to be permitted to ask her "the real reason she cooperated with police after 14 months and the reason that she made the report." Appellant objected that the probative value was outweighed by the danger of unfair prejudice. After a hearing outside the presence of the jury, the trial court allowed Kathryn to testify.

The State asked Kathryn why she decided to speak to the detective after avoiding him for fourteen months. Kathryn responded that Detective Jenkins told her that the DNA taken from her sexual assault examination revealed that there was another victim. The trial court then instructed the jury:

> Jury, you are the finders of fact and the way you choose to believe or not believe evidence; however, in this case, I will say that evidence of other crimes, wrongs, or acts are not generally admissible to prove the character of a person in order to show that on a particular occasion, the person acted in accordance with that character.
>
> However, this evidence may be admissible, if you believe it, for another purpose, such as providing a motive, an opportunity, intent, preparation, plan, knowledge, or absence of mistake or lack of accident. It can be used for other reasons, if you find it useful to yourself. But those will be in your dominion to determine.

## C. KEIRA'S TESTIMONY

The trial court held a hearing prior to Keira's testimony. Appellant again objected that the probative value was outweighed by the danger of unfair prejudice. After considering the factors in Rule 403, the trial court found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice and allowed Keira to testify. Before Keira's testimony, the trial court instructed the jury:

> You're instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed.

7

And, even then, you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, or to rebut defensive theories such as consent or fabrication that may be in connection with the offense alleged against him in the indictment in this case and for no other reason or purpose.

As previously stated, Keira testified that she began talking to Appellant on a dating website and agreed to meet him. She said that Appellant took her to his apartment where he sexually assaulted her.

## D. RULE 403

During the hearings at trial, there was considerable discussion on the relevance of the testimony under Rule 404(b) of the Texas Rules of Evidence. On appeal, however, Appellant argues only that the testimony should have been excluded under Rule 403. In his brief, Appellant discusses the testimony of Kathryn and Keira together when making his argument.

Otherwise admissible evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *see Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.)(first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich*,

8

2019 WL 311153, at *7). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–642 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

## 1. Probative Value

The first two factors set out in *Gigliobianco* assess the probative value of the evidence. Probative value "refers to the inherent probative force of an item of

9

evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco*, 210 S.W.3d at 641.

During his opening statement and later cross-examination of Kathryn, Appellant attempted to show that Kathryn fabricated the sexual assault allegation because she was mad that he did not give her money for rent after they had sex. Consent was the main issue at trial as Appellant testified that he had consensual sex with Kathryn. The probative force of the testimony was strong because it rebutted Appellant's defensive theory that Kathryn consented to the sexual encounter and then fabricated the allegation of assault.

Appellant contends that the State did not need the evidence because Kathryn testified that Appellant penetrated her sexual organ without her consent and because there was DNA evidence showing that he had engaged in sex with her. However, because Appellant attempted to show that Kathryn consented to the sexual encounter, the State needed the evidence to show Appellant's criminal intent. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). The testimony was necessary to show that Kathryn did not consent to the sexual encounter and fabricate the allegation of assault. The first two factors weigh in favor of admission.

### 2. Unfair Prejudice

Unfair prejudice "refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d

at 641. Appellant argues that there was "potential for a decision on an improper basis, as the jurors may have lost sight of the specific issues they were called upon to decide and merely convicted [him] out of a revulsion against his apparent propensity to forcibly sexually assault unsuspecting women."

As set out above, the trial court orally instructed the jury immediately after Kathryn's testimony and again before the testimony of Keira, thoroughly explaining the limited use of the testimony. In addition, the trial court instructed the jury that they could not consider any testimony regarding Appellant having committed offenses, wrongs, or bad acts other than the offense alleged against him unless they believed beyond a reasonable doubt that Appellant committed such other offenses, wrongs, or bad acts. The jury charge further instructed the jury to only consider any extraneous offenses, wrongs, or bad acts in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the Appellant or to rebut any defensive theories such as consent or fabrication.

The instructions equipped the jury to properly weigh the extraneous offense evidence and minimized the risk of the jury improperly relying on such evidence in reaching its verdict. *Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026 *6 (Tex. App.—Fort Worth December 29, 2022, pet. ref'd)(mem. op., not designated for publication); *James*, 623 S.W.3d at 549. We presume that the jury followed these instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Therefore, the unfair prejudice factor weighs in favor of admission.

11

### 3. Confusion of the Issues or Misleading the Jury

Confusion of the issues refers to a "tendency to confuse or distract the jury from the main issues in the case." *Gigliobianco*, 210 S.W.3d at 641. Appellant argues that the testimony of Kathryn and Keira "consumed an inordinate amount of the trial court's time, as well as that of the jury." However, by Appellant's own calculation, the hearings and testimony for both Kathryn's testimony and Keira's testimony amounted to only 54 pages of the over 500 page trial transcript.

Kathryn's testimony explaining why she waited fourteen months to report the sexual assault was brief. Keira's testimony did not consume a large portion of the State's evidence. The State did not call any other witness to provide evidence of sexual assault against Keira. Keira identified Appellant and described a sexual assault similar to the allegation made by Kathryn. As previously discussed, the probative force of the testimony was strong because it rebutted Appellant's defensive theory that Kathryn consented to the sexual encounter. Because the evidence was limited, direct, and relevant, this factor weighs in favor of admission. *See Banks v. State*, 494 S.W.3d 883, 894 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Misleading the jury refers to "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." *Gigliobianco*, 210 S.W.3d at 641. The testimony was not scientific or complex so there was little risk of misleading the jury. *See id.* This factor weighs in favor of admission.

#### 4. LIKELIHOOD OF UNDUE DELAY AND NEEDLESS REPETITION

Undue delay and needless presentation of cumulative evidence "concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Id.* Kathryn's testimony on why she spoke with Detective Jenkins after avoiding him for fourteen months was very brief nor was it repetitive of any other testimony at trial. Neither was Keira's testimony cumulative. She was the only witness who provided direct testimony that Appellant sexually assaulted her. The testimony was not lengthy in relation to the State's case and did not create unnecessary delay. These two factors weigh in favor of admission.

We hold that the trial court did not abuse its discretion in allowing the testimony of Kathryn and Keira concerning an extraneous allegation of sexual assault over Appellant's Rule 403 objection. We overrule the first and second issues.

## III. CONCLUSION

Having overruled Appellant's two issues on appeal, we affirm the trial court's judgment.

/s/Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 25, 2023