

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00067-CR

DRAYVEN ISSAC BRIAN GRAHAM, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1699089

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Tarrant County[1] jury found that Drayven Issac Brian Graham robbed Lamarkus White at gunpoint and convicted Graham of aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03. In accordance with the jury's verdict, the trial court sentenced Graham to ten years' imprisonment. On appeal, Graham argues that the trial court erred by (1) failing to sustain his challenge to a venire member, (2) allowing a photographic lineup to be published before it was authenticated, (3) refusing to allow Graham to question White about his marihuana use, (4) failing to admit White's confidence statement about the photo lineup under the rule of optional completeness, and (5) violating his Confrontation Clause rights by disallowing questioning about White's alleged prior inconsistent statement.

We find that Graham did not preserve his complaint about the veniremember who was not seated on the jury. We conclude that there was no abuse of discretion in the trial court's decision to admit the photo lineup or to exclude evidence of White's marihuana use, evidence of White's confidence statement, and the alleged prior inconsistent statement. We also find that White did not preserve any Confrontation Clause complaint or complaint that White's confidence statement should have been admitted under the rule of optional completeness. As a result, we overrule Graham's points of error and affirm the trial court's judgment.

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

## I.      Graham Did Not Preserve His Complaint About the Veniremember

During voir dire, the panel was asked about the presumption of innocence. After a veniremember stated, "Now, we may say innocent in this room, sure. But no one in this room got here by chance," Graham moved to strike the veniremember for cause. Although Graham's challenge was denied by the trial court, the veniremember was not seated on the jury. Even so, in his first point of error on appeal, Graham argues that the trial court erred by failing to sustain his challenge for cause. We find this issue unpreserved.

The Texas Court of Criminal Appeals has explained that the following is necessary to preserve error in this context:

> Error is preserved for review . . . only if [an] appellant (1) used all of his peremptory strikes, (2) asked for and was refused additional peremptory strikes, and (3) was then forced to take an identified objectionable juror whom appellant would not otherwise have accepted had the trial court granted his challenge for cause (or granted him additional peremptory strikes so that he might strike the juror).

*Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016) (citing *Chambers v. State*, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993)). "By complying with these steps, the defendant shows that he actually needed the peremptory strike that he was forced to use on a biased juror." *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014). "The steps to preserve error and establish harm are intended to allow the trial judge every opportunity to correct error and to allow the defendant to demonstrate that he did not have the benefit of using his peremptory challenges in the way that he desired." *Id.*

Here, nothing shows that Graham used his peremptory strikes, asked for and was refused additional strikes, or was forced to accept an objectionable juror. Instead, the record shows that

the objectional veniremember was not seated on the jury and that Graham had no objection to the panel. As a result, we find that Graham failed to preserve his first issue for our review. It is overruled.

## II. There Was No Abuse of Discretion in the Trial Court's Decision to Admit the Photo Lineup

In his second point of error, Graham argues that the trial court erred by allowing White to authenticate the photo lineup that he used to identify Graham as the perpetrator. We find no abuse of discretion in the trial court's decision that White properly authenticated the document through his testimony.

### A. The Trial Court Denied Graham's Objection to the Photo Lineup Based on White's Testimony

At trial, White testified that he and his friend, Phyllis Cotton, were about to smoke marihuana in White's parked Dodge Charger when he was carjacked. White testified that another vehicle came up to the Charger and blocked it in. Then, an African American male got out of the passenger seat of the other vehicle with a gun, walked over to White's driver's side window, and tapped on his window with the gun in hand. Scared for his life, White got out of his car and "gave him everything [he] had," including the keys to the Charger. According to White, the perpetrator "pistol-whipped [him] in the face," causing injuries that required him to go to the hospital. According to White, Cotton was not afraid, got in the driver's seat of his Charger, and drove off with the perpetrator.[2]

---

[2]During her testimony, Cotton admitted to assisting Graham in setting up the robbery. Matthew Fretz, an officer with the Arlington Police Department (APD), testified that he saw White's car and attempted to stop it, but the driver fled at a high rate of speed, eventually crashing it. Although Cotton and Graham fled after the crash, Ashmin

4

White testified that he identified Graham as the perpetrator from a photo lineup given to him by the APD.  The State handed Graham the photo lineup to review, and White testified that he picked the perpetrator by circling Graham's picture, signing his initials, and writing the date.  After White testified that he recognized his handwriting on the lineup, the State moved to admit it.  In response, Graham objected that the document was created by the APD and that White could not authenticate it.  The trial court overruled Graham's objection and admitted the photo lineup into evidence.

**B.      Standard of Review**

"We review the trial court's decision on the admissibility of evidence for an abuse of discretion."  *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016)).  "The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement."  *Id.* (citing *Johnson*, 490 S.W.3d at 908).  "If the trial court's decision to admit or exclude evidence is correct under any applicable legal theory, we will uphold that decision . . . ."  *Id.* (citing *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

**C.      The Trial Court's Ruling Was Proper Under Rule 901 of the Texas Rules of Evidence**

Rule 901(a) of the Texas Rules of Evidence states, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence

---

Irizarry, a crime scene investigator for the APD, testified that he was able to locate and lift fingerprints from the wreckage.  Robin Kasson, a crime scene investigator and latent print examiner with the APD, testified that analysis of fingerprints from the driver's side window showed they were a tentative match to Graham's fingerprints in the Automated Fingerprint Information System.

sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). The rule "does not require the State to *prove* anything. It requires only a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible." *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd).

Rule 901(b) describes various methods that can be used to authenticate evidence, including providing testimony from a witness who has knowledge of evidence and who states "that an item is what it is claimed to be." TEX. R. EVID. 901(b)(1).

Here, the record shows that White identified the exhibit as the photo lineup showed to him by the APD. He testified that the exhibit contained his handwriting and that he had circled Graham's photo. Accordingly, the trial court was free to find that White's testimony was sufficient to demonstrate that the exhibit was what the State purported it to be—the photo lineup shown to White by the APD. *See Mendoza v. State*, 69 S.W.3d 628, 631 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd) (witness may authenticate exhibit by testifying he saw exhibit at earlier time and recognized it by a distinctive characteristic); *see also Losoya v. State*, No. 13-13-00141-CR, 2015 WL 601969, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 12, 2015, no pet.) (mem. op., not designated for publication) (victim's testimony that an exhibit was "the photo-array shown to him by a . . . police officer" was sufficient to authenticate the photo array).

We conclude that the trial court's decision to admit the exhibit was not an abuse of discretion. Consequently, we overrule Graham's second point of error.

**III.    The Trial Court Did Not Abuse Its Discretion by Sustaining the State's Objection When Graham Questioned White About His Marihuana Use**

During trial, White admitted that he and Cotton smoked marihuana together on the day of the incident. When Graham asked White, "How long have you been smoking wee[d]?" the State objected that the information would be irrelevant to any issue in the case. *See* TEX. R. EVID. 401. White began his answer, "I started when I was" but was cut off so that the trial court could rule on the objection. When asked to respond to the State's objection, Graham failed to explain how his question would produce relevant evidence. Instead, he simply pointed out that marihuana had been found in White's vehicle after the police recovered it. After noting that White had already admitted to smoking marihuana on the day of the incident, the trial court sustained the objection.

Because the Texas Court of Criminal Appeals "implicitly abolished the impeachment of witnesses with evidence of drug addiction with the adoption of the Texas Rules of Criminal Evidence," we cannot find any abuse of discretion in the trial court's ruling. *Lagrone v. State*, 942 S.W.2d 602, 612–13 (Tex. Crim. App. 1997) (citing TEX. R. EVID. 608(b) ("banning admission of specific instances of conduct"); *Ramirez v. State*, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990) ("construing Rule 608(b) to exclude collateral drug addiction evidence")). *Lagrone* explained that "a witness' credibility is only subject to attack on cross-examination when their perceptual capacity is physically impaired by the intoxicating effects of alcohol or drugs during their observation of pertinent events." *Id.* at 613. As a result, Rule 608(b) of the Texas Rules of Evidence "limit[s] the use of alcohol and drug addiction evidence for impeachment to instances

7

where the witness is actually under the intoxicant's influence during the perceptual window of the crime." *Id.* at 614; *see* TEX. R. EVID. 608(b).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. Graham's brief fails to explain how his question would have produced relevant evidence since the length of time White had used marihuana had no bearing on the question of Graham's guilt/innocence. While Graham acknowledges Rule 608(b)'s limitation, he argues that the *Lagrone* exception to the rule applied since he was "asking about smoking marijuana at the time of the crime while using drugs the entire week." We disagree with Graham's characterization of his question and instead find that he was asking White how long he had been smoking marihuana. Because Graham failed to explain the relevance of such information and because he sought to elicit evidence in violation of Rule 608(b), we conclude that the trial court did not abuse its discretion in sustaining the State's objection. As a result, we overrule this point of error.

## IV. Graham Failed to Preserve a Complaint About the Rule of Optional Completeness

Austin Kidd, a detective with the APD, testified that White "selected Drayven Graham's photo as the suspect who robbed him." During cross-examination, Graham sought to admit White's written, out-of-court "CONFIDENCE STATEMENT" about the photo lineup, which said, "his hair and the way he looks made me feel like . . . he the one that might did it [b]ecause when [I] seen it [I] got a uneasy feeling to my stomach and head." The State objected to the

8

confidence statement as hearsay, Graham offered no hearsay exception, and the trial court sustained the objection.

Hearsay is an out-of-court statement, including a written statement, that is offered "to prove the truth of the matter asserted in the statement," TEX. R. EVID. 801(d), and it is inadmissible absent an exception, TEX. R. EVID. 802. When hearsay is objected to, "it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the [hearsay] admissible." *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008).

Graham's briefing on this point fails to address hearsay. Instead, Graham argues that White's confidence statement should have been admitted under the rule of optional completeness. Rule 107 of the Texas Rules of Evidence, the rule of optional completeness, provides that, if a party introduces—among other things—part of a recorded statement, an adverse party may inquire into any other part on the same subject and "may also introduce any other . . . recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent." TEX. R. EVID. 107.

On appeal, Graham argues that, since the photo lineup was admitted, White's confidence statement should also have been admitted under the rule of optional completeness. Yet, the record reflects that Graham wholly failed to make this argument to the trial court. Accordingly, the State argues, and we agree, that "as a prerequisite to presenting a complaint for appellate review, the record must show that the party 'stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the complaint.'"

9

*Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (alteration in original) (quoting TEX. R. APP. P. 33.1(a)(1)). "So it is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Id.* Because Graham did not "expressly offer the evidence for the purpose which he now claims on appeal, such is not a basis for complaint on appeal." *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994); *see Reyna*, 168 S.W.3d at 177.

We find that Graham did not assert Rule 107 as a basis for admitting White's confidence statement and that, as a result, any complaint about the admissibility of the statement under the rule of optional completeness is unpreserved. We overrule Graham's fourth point of error.

## V. The Trial Court Did Not Abuse Its Discretion by Excluding Extrinsic Evidence of a Prior Inconsistent Statement

To the extent Graham argues that his Confrontation Clause rights were violated because of the exclusion of White's confidence statement, we find the matter unpreserved. "[T]he Rules of Appellate Procedure and Court of Criminal Appeals case law require that Confrontation-Clause complaints be preserved at trial to be raised on appeal." *Serrano v. State*, 636 S.W.3d 717, 721 (Tex. App.—Fort Worth 2021, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010)). Doing so gives the trial court an opportunity to remedy any purported error. *Dollins v. State*, 460 S.W.3d 696, 698 (Tex. App.—Texarkana 2015, no pet.). Because the record shows that Graham failed to argue that the Confrontation Clause demanded admission of the confidence statement, he has failed to preserve this complaint for our review. *See Reyna*, 168 S.W.3d at 177.

10

Next, Graham also argues that the trial court should have admitted the confidence statement as a prior inconsistent statement. The issue here, however, is that Graham failed to request admission on that basis during White's testimony. Instead, Graham simply handed the confidence statement to White and asked, "In that statement, Mr. White, were you 100-percent sure that it was Drayven Graham that robbed you?" White answered, "Yes, ma'am." Graham again asked, "Did you write that you were 100-percent sure?" to which White responded, "A hundred-percent sure, ma'am." At that point, Graham moved on and did not seek to introduce the confidence statement.

Instead, Graham waited until Kidd testified, during cross-examination, that his arrest warrant stated that White had positively identified Graham as the suspect. Graham then asked, "Is an uneasy feeling a positive identification?" That drew a hearsay objection from the State since Graham was asking about "[White's] written statement and [there was] no personal knowledge for [that] witness." When the trial court discovered that Graham was asking Kidd about White's confidence statement, it sustained the State's objection after saying, "That person was on the stand. You didn't ask him that then?"[3]

On appeal, Graham argues that the trial court should have admitted White's confidence statement as a prior inconsistent statement during Kidd's cross-examination. We disagree.

Prior inconsistent statements, which would otherwise be hearsay, can be offered for the limited purpose of impeaching a witness. *See* TEX. R. EVID. 613, 801, 802. Under Rule 613(a), "a party [may] impeach a witness with a prior inconsistent statement" if the "proper predicate is

_____

[3]Our liberal reading of the record indicates that the trial court understood that Graham was seeking to admit the confidence statement as a prior inconsistent statement.

11

laid." *Ex parte Saenz*, 491 S.W.3d 819, 827 (Tex. Crim. App. 2016) (orig. proceeding). A proper predicate requires that, "[w]hen examining a witness about [his] prior inconsistent statement—whether oral or written—a party must first tell the witness: (A) the contents of the statement; (B) the time and place of the statement; and (C) the person to whom the witness made the statement." TEX. R. EVID. 613(a)(1). "A witness must be given the opportunity to explain or deny the prior inconsistent statement." TEX. R. EVID. 613(a)(3).

"In order to qualify for admission under Rule 613(a), the court must be persuaded that the statements are indeed inconsistent." *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). That determination is reviewed for an abuse of discretion. *Id.* Here, White testified that his confidence statement reflected that he was one hundred percent sure that Graham was the person who robbed him. White's confidence statement said that Graham's photo gave him a feeling that Graham might have done "it because [of] a[n] uneasy feeling." For purposes of our analysis, we assume Graham's testimony was inconsistent with his confidence statement.

Even so, the record shows that Graham did not give White the opportunity to explain or deny his confidence statement, which White never denied making. That appeared to be the basis of the trial court's exclusion of the evidence when Graham sought to introduce it through Kidd.[4] Because the plain language of Rule 613(a)(4) states that "[e]xtrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement," we cannot say that the trial court abused its discretion by making its ruling. TEX. R. EVID. 613(a)(4).

---

[4]The State notes that Graham "fails to cite any authority that supports his notion that a witness can be questioned regarding a different witness' prior inconsistent statement."

12

We find that the trial court's evidentiary ruling excluding the confidence statement was within the zone of reasonable disagreement.  As a result, we overrule Graham's last point of error.

## VI.     Conclusion

We affirm the trial court's judgment.


                         Charles van Cleef
                         Justice

Date Submitted:      August 28, 2024
Date Decided:        September 20, 2024

Do Not Publish