

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00313-CR

———————————————

STEPHANIE DENISE JONES, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1748718

_____

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted Stephanie Denise Jones of injury to a disabled individual by criminal negligence. *See* Tex. Penal Code Ann. § 22.04(a)(1), (a-1). Jones has appealed this conviction, arguing in two issues that the evidence is insufficient to (1) establish that she caused injury or impairment to the victim and (2) corroborate the accomplice-witness testimony. We will affirm.

### I. Background

Kristi Norris died at 36 years old while living in a group home and while under Stephanie Jones's care. Norris had lived in group homes for more than 20 years, due to diagnoses of autism-spectrum disorder, attention-deficit hyperactivity disorder, profound intellectual-developmental disorder, epilepsy, and cerebral palsy. Jones was aware of Norris's diagnoses, as she had worked with Norris for more than ten years as a caregiver.

Because of Norris's diagnoses, a behavior analyst developed a care plan for her. Norris's care plan required that she always be in the "line of sight" of her caretakers. Norris needed to be closely monitored because she had pulled a dresser onto herself before and was a flight risk. The care plan also identified certain "rights restrictions"— including locking up sharp objects and locking the kitchen to prevent Norris from entering while a caretaker was cooking or preparing medications.

Norris's caretakers were informed about her care plan and were also aware of the seizure protocol for Norris. When Norris had a seizure, a magnetic piece had to be

2

rubbed across an implanted vagas nerve stimulator in her chest to regulate and stabilize the electrical impulses in her brain. A seizure was especially dangerous because it could quickly cut off Norris's airway.

To support Norris's care, a wheelchair and safety harness were prescribed to her for community integration and transportation. The wheelchair was prescribed only for those purposes and was not meant to be used as behavior management, as a rights restriction, or as an attempt to "contain" Norris. Despite the use limitations, several caretakers admitted that putting Norris in her wheelchair outside the prescribed uses would help keep her in sight and would support her safety and care.

It was challenging for a single caretaker to meet all the requirements of Norris's care plan when that person was solely responsible for all four residents in the group home.

Norris had made various attempts to "escape"—either to leave her wheelchair or to run away from caretakers and the group home. Once, she had attempted to escape her wheelchair while being transported. She wriggled so far down in her wheelchair that she was able to wrap her legs around the van driver while he was driving. Norris had also attempted to get out of the van while it was moving and thought that running away was a game.

On the day Norris died, Jones and Leola Thomas, another caretaker, were both on duty at the group home. Jones had worked overnight, and Thomas arrived around 8:00 a.m. When Thomas arrived, Norris and the other three residents were in their

respective rooms. The door to Norris's room was closed. When she arrived, Thomas did not check on Norris but began to bathe and care for another resident. Thomas indicated that Jones was responsible for Norris's care during that time. After bathing one of the residents, Thomas checked in with Jones, who was mopping the floor and had not yet bathed Norris.

Shortly after 10:00 a.m. Thomas heard Jones scream for her, and Thomas rushed to Norris's room. Jones was there with Norris, who was strapped in her wheelchair, head tilted, and unconscious. It appeared to Thomas that Norris had wriggled down and choked on her wheelchair's harness. Jones and Thomas took Norris out of the wheelchair, first moving her to the bed and then to the floor where Thomas began chest compressions, and Jones called 9-1-1. Norris had no pulse when the paramedics arrived; they began medical intervention in an effort to resuscitate her. Norris was ultimately pronounced dead at the scene.

No internal autopsy was performed. After conducting an external examination of Norris's body, a forensic pathologist determined that Norris died from accidental compressional asphyxia. A different medical examiner later reviewed the case and amended the cause of death to be "undetermined." Despite this modification, the amended conclusion did not rule out asphyxia as a cause of Norris's death. The marks on her neck were consistent with its having something flexible wrapped around it—and with injuries found on a hanging victim. There was also evidence of petechial hemorrhaging of the eyes—dot-like red discolorations that can indicate asphyxia.

4

A grand jury later indicted Jones for her part in Norris's death. In the indictment, the State alleged—among other things[1]—that Jones had "recklessly, by placing Kristi Norris in a wheelchair and by improperly strapping Kristi Norris into said wheelchair and by leaving Kristi Norris unattended and by not keeping her within [eyesight], cause[d] serious bodily injury to Kristi Norris, a disabled individual[,] by causing her to asphyxiate."

Although Thomas testified that she and Jones had found Norris strapped in her wheelchair and unconscious, both Jones and Thomas initially told emergency responders and investigators that they had found Norris unconscious under a dresser. Thomas recanted the dresser story several weeks after Norris's death. Eventually, Jones also admitted the dresser story was a lie.

The jury found Jones guilty of the lesser-included offense of injury to a disabled individual by criminal negligence.[2] *See id.* § 22.04(a). The jury assessed punishment at

---

[1]The State charged Jones with four paragraphs under Section 22.04: (1) causing serious bodily injury to Norris; (2) causing serious mental deficiency or impairment or injury to Norris; (3) as an employee of a group home, causing serious bodily injury to Norris; and (4) as an employee of a group home, causing serious mental deficiency or impairment or injury to Norris. *See* Tex. Penal Code Ann. § 22.04(a)(1), (a)(2), (a-1)(1), (a-1)(2).

[2]Jones was also convicted of tampering with evidence, *see id.* § 37.09(c), for which the jury assessed punishment at six years' confinement, to be suspended in favor of community supervision, and a $10,000 fine. The trial court sentenced Jones accordingly. Jones does not challenge this conviction on appeal.

confinement for one year in state jail and a fine of $10,000. *See id.* § 22.04(g). The trial court sentenced Jones accordingly. Jones raises two evidentiary challenges on appeal.

## II. Evidentiary Sufficiency—Serious Bodily Injury to a Disabled Individual

Jones's first issue challenges the sufficiency of the evidence to prove that she injured a disabled person by criminal negligence. Specifically, Jones argues that the evidence is insufficient to establish that she caused Norris any injury or impairment because the jury could only speculate that Norris's death was caused by asphyxiating on the wheelchair's harness strap.

### Standard of Review

For evidentiary sufficiency, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine

6

whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021), *cert. denied*, 142 S. Ct. 859 (2022).

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see*

7

*Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

**Applicable Law**

A person commits an offense (1) if she, by criminally negligent act or reckless omission, causes serious bodily injury to a disabled individual, Tex. Penal Code Ann. § 22.04(a)(1), or (2) if she is employed by a group home and, with criminal negligence and by omission, causes serious bodily injury to a resident of that home, *id.* § 22.04(a-1).[3] An *act* is "a bodily movement, whether voluntary or involuntary," and an *omission* is a failure to act. *Id.* § 1.07(a)(1), (34). *Serious bodily injury* is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or

---

[3]Despite the four paragraphs under Section 22.04 listed in the indictment, the jury charge asked only generally whether Jones was guilty of injury to a disabled individual and did not ask a separate question for the discrete Section 22.04 offenses listed in the four paragraphs. *See Nawaz v. State*, 663 S.W.3d 739, 746, 748 (Tex. Crim. App. 2022) (holding that types of injury in Section 22.04(a) are separate offenses for double jeopardy purposes); *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (holding the same for jury unanimity purposes). Because the jury charge conflates the offenses of act and omission laid out in the indictment, we focus our analysis on one of the discrete Section 22.04 offenses Jones was charged with—"serious bodily injury by criminally negligent act." *See* Tex. Penal Code Ann. § 22.04(a)(1); *see also*, *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) (en banc) ("The principle is well-established that when the jury returns a general verdict and the evidence is sufficient to support a guilty finding under any of the allegations submitted, the verdict will be upheld.").

protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

A person acts with criminal negligence "with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(d). The risk taken "must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

A person is criminally responsible for causing the result of her conduct if the result would not have occurred but for her conduct, operating alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the actor's conduct clearly insufficient. *Id.* § 6.04(a).

**Discussion**

Jones claims that the evidence was insufficient to prove what caused Norris's death; thus, the jury could only have speculated that Jones's strapping Norris into her wheelchair and leaving her unattended caused her death. Viewing the evidence in the light most favorable to the verdict, we disagree.

First, Jones does not dispute that Norris's body showed signs of injury to her neck. The jury saw post-mortem pictures of Norris that showed curved bruising and

9

marks around her neck.[4] Thomas also testified that when Norris was found, she was unresponsive and strapped into her wheelchair, and the harness was around her neck.

Second, the deputy medical examiner, Dr. David Joseph, testified that Norris's injuries were consistent with a hanging or with pressure around the neck from a soft material. He also testified that asphyxia was a possible cause of her death and that, generally, asphyxia can cause serious bodily injury resulting in death. Although Dr. Joseph did not perform the initial external autopsy and was not the person whose review of the initial examiner's report resulted in changing the cause of death to undetermined, he testified that the medical examiner who performed the external autopsy knew both versions of how Norris was found—either under the dresser or strapped in her wheelchair. And Dr. Joseph admitted that, knowing both stories, the first medical examiner still concluded that Norris's death was caused by accidental compressional asphyxiation. No testimony at trial explained why the first medical examiner's cause-of-death determination was reviewed and changed—other than Dr. Joseph's statement that "there wasn't enough information." The jury was therefore free to believe the conclusions in the first autopsy report. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (holding that the jury is the sole judge of the credibility

---

[4]Nothing in the record suggests that Norris had sustained any injuries before the morning of her death.

and weight to be attached to witness testimony and that we must presume the jury resolved any conflicting inferences in favor of the verdict).

Third, Thomas testified that Jones was responsible for Norris's care the day she died and had placed Norris alone in her room with the door closed. Jones admitted to a police detective that she last saw Norris around 9:00 a.m. and that she did not see Norris again before she was found unresponsive shortly after 10:00 a.m. Thomas said that when they found Norris, it looked like she had wriggled down and choked on the harness of her wheelchair. Norris had attempted to escape her wheelchair before, and there was testimony that all her caretakers knew she was supposed to remain "in line of sight."

Based on this evidence, the jury could have reasonably inferred that Norris died by asphyxiating on the wheelchair's harness strap after Jones had strapped her into the wheelchair and left her alone in her room—and that Jones should have known about this risk. *See* Tex. Penal Code Ann. § 22.04(a)(1); *see also Cyr v. State*, 665 S.W.3d 551, 560 (Tex. Crim. App. 2022) (when criminal conduct is a foreseeable result of negligent acts or omissions, the tortfeasor is liable for that conduct); *Fountain v. State*, 401 S.W.3d 344, 356 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("[C]ause of death may be proven solely by circumstantial evidence."); *Hopper v. State*, No. 02-11-00492-CR, 2013 WL 4679166, at *6 (Tex. App.—Fort Worth Aug. 29, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that a person is criminally responsible under Penal Code § 6.04(a) if the result would not have occurred "but for" the actor's

11

conduct—and the result must be within the scope of risk of which the defendant knows, and the intervening cause must be reasonably foreseeable).[5]

Additionally, the jury heard testimony that Norris was prone to seizures and that if a seizure were to happen, the caregivers were to follow an established response protocol, part of which was to make sure that Norris did not aspirate. This protocol logically could not have been activated if Norris was not in sight when a seizure occurred.

A nurse who treated Norris testified that a seizure could have cut off Norris's airway, causing her to suffocate even in the short time it might take to bathe another resident or prepare a meal. The jury could have reasonably inferred that Jones's act of

---

[5]Jones argues that the evidence raises only the *possibility* that Norris asphyxiated from the wheelchair strap and that the jurors would have had to speculate that the marks observed on Norris's neck happened while she was alive, citing *Edwards v. State*, 666 S.W.3d 571 (Tex. Crim. App. 2023). In *Edwards*, the Court of Criminal Appeals reversed the court of appeals because insufficient evidence showed that the victim suffered a serious mental deficiency, impairment, or injury. *Id.* at 577. The child in that case had ingested a large amount of cocaine, but no one testified that the ingestion was actually harmful, only that the child's ingestion of cocaine *could* have been harmful. *Id.* at 576. *Edwards* is distinguishable because there was testimony here that Norris was found with the harness around her neck, she had bruising consistent with that of a hanging victim, and the initial cause of her death was compressional asphyxiation. Although Dr. Joseph spoke in "possibilities" rather than providing a direct statement about Norris's cause of death, he also confirmed that *Norris had injuries* and that those injuries were consistent with those found on a hanging victim. Thus, even considering that a second examiner determined that the first examiner's asphyxiation conclusion should be changed to undetermined, evidence was also presented that Norris suffered actual injures, that she was in Jones's care at the time of the injuries, and that Jones should have known that such injuries were possible under those circumstances. All this evidence suffices to support the jury's verdict.

simply leaving Norris unattended resulted in her death, even if the wheelchair strap itself did not cause her to asphyxiate.

Because we conclude that the evidence was sufficient to support Jones's conviction under Section 22.04(a)(1), we overrule Jones's first issue.

### III. Evidentiary Sufficiency—Accomplice-Witness Rule

Jones's second issue rests on her assertion that Thomas was an accomplice-witness as a matter of law. According to Jones, no sufficient evidence corroborates Thomas's inculpatory testimony according to the accomplice-witness rule. Although the State disputes that Thomas was an accomplice-witness, we need not decide that issue because sufficient evidence corroborates Thomas's testimony.

**Standard of Review**

Article 38.14 of the Code of Criminal Procedure sets out the accomplice-witness rule: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[,] and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14.

When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d 356,

13

361 (Tex. Crim. App. 2001)). "To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.* Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016) (citing *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999)). Rather, the direct or circumstantial corroborating evidence must show that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

**Discussion**

Officer Juan Arreguin and Detective Christina Watson testified that they both spoke with Thomas and Jones after Norris was found and that Thomas and Jones were the only caretakers working at the group home that morning. Jones told Detective Watson that she last saw Norris alive at 9:00 a.m., that she had left Norris alone, and that she had then discovered Norris unresponsive shortly after 10:00 a.m., when she called 9-1-1. Despite the visible curved injuries to Norris's neck, Jones told the 9-1-1 operator and investigating police officers that a dresser had fallen on Norris. In a later civil deposition played for the jury, Jones admitted that the dresser had not fallen on Norris that day. Jones's admission that she lied to police about the circumstances of Norris's death demonstrated her "consciousness of guilt" to the jury. *See Woods v. State*, No. 07-22-00208-CR, 2023 WL 4924076, at *1 (Tex. App.—Amarillo Aug. 1, 2023, no pet.) (mem. op., not designated for publication) ("Lying to the police reveals a

consciousness of guilt and, as such, is circumstantial evidence of guilt." (citing *Farek v. State*, No. 01-18-00385-CR, 2019 WL 2588106, at \*5 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. ref'd) (mem. op., not designated for publication))); *see also Couchman v. State*, 3 S.W.3d 155, 163–64 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that the jury could reasonably conclude that defendant lied because he had something to hide and that changing his story evidenced his consciousness of guilt); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (holding that "consciousness of guilt" may be one of the strongest indicators of guilt).

Norris's mother testified that anyone who worked with Norris knew she would try to escape from her wheelchair. Testimony showed that Norris would attempt to wriggle out of the wheelchair while in the car—and that she was occasionally successful in those attempts. A text message demonstrated that Jones also knew that Norris's mother did not want Norris placed in the wheelchair as a means of "containing" her. Thus, the non-accomplice evidence exhibited Jones's awareness that she should not leave Norris in her room alone and out of sight, much less while confined in her wheelchair.

The evidence—even without Thomas's testimony—tends to connect Jones to the offense's commission; thus, it is sufficient to support her conviction under the accomplice-witness rule, assuming that rule applies here. *See Qualls v. State*, 547 S.W.3d 663, 671 (Tex. App.—Fort Worth 2018, pet. ref'd) ("[P]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with

other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." (citing *Smith*, 332 S.W.3d at 443)). We overrule Jones's second issue.

## IV. Conclusion

Having overruled both of Jones's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 20, 2025